Judge Ewing
delivered the Opinion of the Court—held,
for this case, by Judges Ewing and Marshall only.
William Davis, by his last will, made in 1816, directed his executors to sell all his estate, except the part left to his wife during her life, and to divide the proceeds equally among his children, except James, to whom he gave nothing, and Rebecca, to whom he gave one hundred dollars more, and Duncan, his son-in-law, fifty dollars less than the rest. And directed his executors, after his wife’s death, to sell the part left to her, and divide the proceeds equally among his children, except James. He directed the money left to his daughter Rebecca, “to be *128 placed in the hands of William Jennings, as her trustee, for her use and benefit, and to be handed out to her only as she, in his discretion, may need the same, in order for her necessary clothing and boarding,” and in the event of the death of said Jennings, before the death of his daughter, he directed the County Court to appoint some fit person to manage her estate. And appointed James Thompson and William Jennings his executors; the latter of whom took upon himself the execution of the will, and the said trust.
A trustee and the cestui que trust may properly unite, as comp’ts, in a bill to recover the trust fund.
Rebecca went to Jennings’ shortly after her fathers death, and was boarded and clothed by him, until his death, which took place in 1831; he having previously made his will, and appointed his son John his sole executor; who took upon himself-the execution of the will.
John Jennings, also, departed this life in a short time, having previously made his will, and appointed G. Robertson and R. P. Letcher his executors; who, also, took upon themselves the execution of his will.
The County Court of Garrard, after the death of William Jennings, in conformity to the directions of the will of Davis, appointed William Wheeler trustee, to manage the estate of Rebecca.
Wheeler and Rebecca then united in filing their bill against John Jennings, as the executor of the trustee, William Jennings, and after the death of John, revived their suit against Robertson and Letcher, his executors.
On the hearing, the Circuit Court decreed that, Robertson and Letcher, as executors of William Jennings, pay out of the assets of said Jennings in their hands, to William Wheeler, as trustee, $909,03, and costs. From which decree, the defendants have brought the case to this Court by writ of error.
It is first objected that, Wheeler and Rebecca have been improperly joined in the bill; and if they have not, that the proper parties are not before the court.
It was certainly proper for Wheeler and Rebecca to unite in the bill. Wheeler had been appointed trustee, by the County Court, and as such, had a right to have the money decreed to be paid over to him, to be applied, by him, for the use and benefit of his cestui que use, as directed *129 by the will, under which he derived his authority; and Rebecca was equitably interested in the fund sought to be recovered, and should be before the Court, in a controversy in which her interest is so deeply involved. And we know of no more favorable attitude, which she could be made to occupy, than to be joined with her trustee as complainant.
When a bill is so drawn that it will bear two different constructions, and upon one construction, there is a defect of parties, but upon the other, there is not, that construction by which the decree of the court below, will be sustained, will be adopted by the court of appeals.
Though William Jennings is alleged in the bill to have been executor, as well as trustee, it may be construed, without doing violence to its terms, to present a proceeding for an account, and payment over, of the trust fund which had come to the hands of Jennings, as trustee, and not as executor.
The bill, after detailing the history of the case, concludes by alleging, “that John Jennings, though often requested, had not paid over to William Wheeler, the amount of estate, which had been received by William Jennings as trustee for your oratrix, and which remained in his hands at his death. Nor has the said John adjusted the accounts of the said trust.” This is the burthen of complaint, and the grounds for the remedy sought. And though, in the forepart of the bill, his appointment and qualification, as executor, are stated, and that a large sum came to his hands as such; and in the latter part the defendant is called upon to exhibit an account of the sums received by William Jennings, as executor, and trustee—the former may be regarded as a historic detail of facts; the latter as a call for a discovery of the amount of the whole estate of Davis, as a mean of ascertaining the amount which had come to his hands as trustee.
If the proceeding be against the representatives of Jennings, for an account of the trust fund only, which remained in his hands as trustee, at his death, then it was wholly unnecessary to bring the other executor, or other legatees of Davis, before the Court.
But if the bill be construed to present two aspects, one against Jennings as executor, the other against him as trustee, and the decree can be sustained in one aspect, without bringing other parties before the Court, that aspect should be assumed and adopted by this Court, *130 to sustain the decree. It would not only be entirely useless, but vexatious, for this Court to reverse the decree, and send it back, because other parties may be necessary, in one aspect of the case, when the decree, as rendered, is sustainable in another aspect, fairly and fully presented in the bill, without requiring other parties to be made.
A suit cannot be against a party as trustee under a will, for funds which came to his hands as the ex'or only; but lapse of time (16 years and more in this case,) may authorize the presumption that the estate had been settled, and the funds since held by the def’t in his character of trustee or that, as such, he had been guilty of such neligence in reducing the fund to possession; as will make him liable.
Charges against the trustee for the services of the cestui que trust in his family, and for interest on the trust fund, resisted.
And it would be equally useless and vexatious, for the Circuit Court to dismiss a bill, because proper parties were not brought before the Court, when, in one aspect, the bill could be sustained without them.
It is true that, Jennings, as trustee, could not be made liable for any of the estate of Davis which rightfully remained in the hands of his, Davis’, executors, unadministered, unless he had been guilty of negligence in failing to reduce it to his possession as trustee.
But the lapse of time that has intervened, since he took on himself the execution of the will of Davis, being about twenty years, and since the death of the widow, being about sixteen years, raises a strong presumption that the estate has been fully administered, and each legatee’s interest paid over to him; and Rebecca’s, to Jennings as her trustee. No other reasonable presumption can arise, if Jennings, as executor, has done his duty. And this presumption is strengthened, and rendered conclusive, by the admission of the defendants, in their answer, that each of the other legatee’s interest, has been paid over to him.
We conclude, therefore, that the whole interest of Rebecca in her father’s estate has come to the hands of Jennings, as her trustee, and that he is accountable for the whole amount, in his character of trustee. If so, it was only necessary to bring him, or his representative, before the Court in that character, and no others.
The commissioner appointed, by the Court, to audit the accounts &c. and report to the Court, has estimated the personal services of Rebecca, together with the interest upon her trust fund, as equivalent to her maintainance—board and clothing, and the personal services and care of Jennings, in superintending her estate; and has reported accordingly. And the decree is rendered upon *131 this estimate and view of the case; which, is fully sustained by a clear preponderance of proof.
A legacy was given to a trustee for the support of the testator’s daughter; but there was nothing in the will indicating that she was to be exempt from the duty of supporting herself, as far as she could, by her own exertions. She lived with the trustee, was supported by, & labored for, him—her services being worth as much as her support and the care of the fund: held that, the trustee is chargeable with her services, as a set off against his claim for her support and the care of the fund.
A bequest to a trustee (of a moderate sum) for support of daughter—to be at the discretion of the trustee,as the cestui que use may need it, implies that she is to support herself by her own exertions, as far as resort to the fund for the deficiency only.
Where a demand set up in a bill is met by a cross claim of the def’t, which is met in its turn, by another claim of the comp’t, it is no objection to the latter, as a rebutter, that it is not contained in the bill.
*131 It is contended, by the counsel of Jennings’ representatives, that nothing should be allowed for the personal services of Rebecca, whilst she resided with and was boarded by Jennings. And secondly, that the trustee is not chargeable with interest upon the trust fund in his hands.
The personal services of Rebecca and the use of the money were both taken into the estimate, in the report which is made.
We can perceive no principle of equity that would justify the rejection of her personal services. Though of weak mind, and subject to occasional fits of intemperance, she was able to perform and seems to have been generally engaged in, the most slavish and menial services towards the support and clothing of herself, and for the use and benefit of Jennings.
Those services should surely go towards lessening the amount justly chargable against her for her maintenance.
Had she been placed as a boarder, under the care of any other, with the understanding that she was to render what service she could, her boarding and maintenance could certainly have been procured, upon much better terms, than if she was to do nothing in the way of service.
Nor is there any thing, in the terms of the will, creating the trust, from which it can be implied, that she was to be exempt from all service, or exertion, and was to depend upon the trust fund exclusively for her support. Indeed, its terms, connected with her ability to labor, would lead to a contrary conclusion. It was to be paid out to her as she, in the trustee’s discretion, might need it. She was able to labor, and like all other able bodied persons, should be engaged in some useful occupation, and cannot be properly said to need the money, except to supply those necessaries which her reasonable exertions could not supply.
Nor will it avail, that no specific charge is made in the bill for services. The complainants do not seek to re *132 cover pay for the services. They only set up a claim for an account and settlement of the trust fund. The defendants, by way of reducing the amount, set up a claim for the support and maintenance of Rebecca. And as an abatement and reduction of that claim, the complainants set up the services of Rebecca. The allegations of the bill arc sufficiently broad to justify the inquiry and abatement for the services.
Where a, fund is placed in this hands of a trustee, for the benefit of a cestui que trust, it is the duty of the trustee to make it as productive, as a discreet, prudent use of the fund will permit. To let it lie idle is such a neglect of duty as will make the trustee chargeable with interest.
We are also satisfied, from a full review of the authorities, as well as from the reason and propriety of the case, that the trustee is chargeable with interest. The trust fund was placed in his hands, to be paid out to her as she might need it. It was intended for her support during her life. Small amounts at a time were sufficient for this purpose; And the trustee might well calculate the probable amount that would be required from year to year; and should not, as a prudent discreet man, intrusted as a confidential agent and friend of the testator, to manage the estate of an unfortunate daughter, permit the surplus to lie idle and unproductive in his hands, no more than he should permit, houses, or improved farms, if such had been the property vested in him, to lie idle and untenanted. Having undertaken the trust, it was his duty to loan out the surplus, and render it as profitable to his cestui que trust as he reasonable could. A trust is looked upon, in Chancery, as a matter of honor and conscience, and undertaken with humane, friendly, benevolent or charitable motives.
The most important and delicate interests are generally committed to the hands of a trustee, as a conscientious, faithful and prudent friend of the donor. As such, he should use the powers vested in him. As a prudent, discreet, conscientious friend, he should loan out the surplus of the trust fund on safe securities, or otherwise vest it so as best to promote the benevolent ends of the trust. If he does not, but permits it to lie idle, he is guilty of a deriliction of duty, unworthy of the confidence reposed, and should be made responsible for at least legal interest.
Besides, there is no evidence that he permitted it to lie idle, or that he did not loan it out, or put it to use. *133 And as it was his duty to do so, the presumption is that he, as a faithful agent, did do it. And if he used it, or intermingled it with his own funds, thereby making it subserve the purposes of credit, or made profit out of it, or loaned it out, he is unquestionably liable for interest.
Executors and adm'rs; as a class of trustees, and guardians and other trustees, whose offices are of a permanent nature, stand upon different grounds, as regards liability for the use or interest of the funds in their hands. The former are bound to keep the funds ready for creditors, legatees &c. It is no part of their duty to employ the funds in any other way; and unless it appears that they have done so, they are not (in this state) accountable for interest. The latter (guardians &c.) are bound to make the funds in their hands productive (ut supra,) and are liable for the product, and for interest, if they fail in their duty in that respect.
In support of these views, the most abundant authorities are to be found.
In the case of Dunscomb vs. Dunscomb, 1 John. Chy Repts. 510, Chancellor Kent remarks: “if the money (as “ we are at liberty to suppose) has been mingled with “ their own moneys, it has answered the purposes of “ credit, and the rule is settled, that executors, and all “ other trustees, are chargeable with interest, if they “ have made use of the money themselves, or have been “ negligent, either in not paying the money over, or in “ not investing it, or loaning it out, so as to render it “ productive."
The like principle is sustained, by the case of Travis vs. Townsend, 1 Bro. 385, and Rocke vs. Hart, 11 Ves. 58.
This was also the rule in the civil law, with the guardian or tutor of minors, after allowing to them six months to invest their funds. After which, if they failed to do so, they were made liable for interest, as an indemnity to the minor, for their negligence.
It is true that, this Court; in some respects, has established a different rule in relation to executors and administrators, as trustees of the funds committed to them. But this difference has grown out of their peculiar duties and functions, as prescribed by our statutes. They are required to pay the debts, and distribute the surplus among the legatees or distributees, as soon as may be. It is no part of their duty to lend it out, or to vest it in securities, and they are not responsible if they fail to do so. Nor is it any part of their duty, as settled by this Court, to make profit out of the distributable funds in their hands. But their duty is always to hold it ready, to pay over to those entitled, as the law directs. I heir attitude, functions and duties are altogether different from those of the trustee in the case before the Court, *134 His attitude and duties are more analagous to those of our guardian, who holds the money for the use and support of his ward, the surplus to be paid over to him, when he arrives at age. The trustee in this case holds it for the use and support of his cestui que use, as she may need it. As the guardian’s duty is to lend it out, and he is made responsible for interest, if he fail to do so—so, also, should it be the duty of tho trustee to lend it out, and he should be made responsible, if he fail to do so.
A trustee charged with a fund for the support of another, cannot have his account of disbursements allowed in ch’y, without some proof to support it, tho’ slight proof—such as will raise a reasonable presumption that the the account is fair, may be sufficient.
Ex’ors and adm’rs, under the statutes and decisions of this state, are allowed compensation for their services, by commissions and other allowances; but query whether any thing beyond actual expenses, ought to be allowed to trustees in general.
An account of disbursements by the trustee, is exhibited, without any proof to sustain it. And it is contended, that it should be allowed. There is nothing in the will which can be construed as intending to place the trustee beyond accountability, nor are we apprised of any rule of evidence, which would justify the admission of items of disbursements, in his case, more than in the case of any other fiduciary or trustee, without proof. Credits that are set up, in this, as well as all other cases,must be sustained by proof. Very slight proof it is admitted, would be sufficient in a case like the present.—Any proof that would suffice to raise a presumption that the disbursements were made.
But if the account be admitted, as it is made up of articles procured for the support and clothing of Rebecca, and as the report of the commissioner, sustained by the proof, balances her personal services and the interest upon her money, against the cost of her maintenance and clothing, those items whatever they may have been, are covered and liquidated by the decree as rendered.
It is, also, worthy of remark, that her personal services and the interest upon her money, is not only, by the report and proof, made to balance the charges and disbursements, for her maintenance, but also, to compensate the trustee, for superintending her estate and person. And it certainly is a question, whether a trustee is entitled to any compensation for his personal services, care and pains in superintending the trust fund, other than for just charges, expenses and responsibilities, incurred in managing the fund.
Chancery looks on trusts, generally, as honorary, and *135 not undertaken with mercenary motives. Chancellor Kent, in the case of Green vs. Winter 1 John. Chy. Reports, 37, remarks: “that a trustee is entitled to a liberal “ indemnity for his expenses and responsibilities, incur- “ red in the due and faithful execution of the trust; “ cannot demand compensation beyond what may be founded “ on the agreement of the party.” And in the case of Manning vs. Manning, same book, 532, he re-affirms the same doctrine, and sustains it by an argument of great force, and a reference to a long train of English authorities.
There are other modern decisions in some of the states, repudiating the doctrine, and allowing to executors and other trustees, a commission upon the trust fund, as a compensation for services. 1 Washington’s Reps. 246; 4 Hen. and Mun., 415; 1 Mun. 150; 3 Binney, 457. But it is probable that those decisions were predicated upon some peculiarity in their statutes, justifying the allowance.
Our statute concerning wills and the distribution of intestates’ estate (1 Stat. Law 668,) in extraordinary cases, allows such compensation. And the decisions of this Court have sustained such allowances, in all cases, in favor of executors and administrators.
But whether such allowance should be made to other trustees, or other compensation for pains and care, other than for reasonable charges, disbursements and costs, is not necessary to be determined in this case.
If compensation should not be made, then is there still less ground for complaint against the decree, on the part of the plaintiffs in error.
If compensation be allowed, other than as above restricted, that compensation has been allowed in the re. port and decree, and has been liquidated and settled by the interest upon the trust fund and the personal services of Rebecca.
The decree of the Circuit Court should therefore be affirmed.