JUDGE ROBERTSON
delivered the opinion of the court:
Peter Hendrix, after residing on his farm of two hundred and twenty acres, near Sharpsburg, in Bath county, Kentucky, until he was about eighty years old, and infirm in both mind and body, concluded to change his mode of life and reside alternately with two sons and a married daughter, in Indiana.
*307 Preparatory to that end, those sons and two of his sons-in-law helped him to sell his movable property, except slaves, early in July, 1848 ; and, the day after the sale, the sons and son-in-law, resident in Indiana, started with him to their home; whence, only a few days after-wards, he wrote to another son-in-law, Sanford Hendrix, still remaining in Bath, and whom he had empowered to dispose of his land and about ten slaves, the following letter:
“July 18th, ’48.
“Sanford Hendrix: I want you to come out. I think it will be an advantage for you to come. The boys and me have talked about them negroes and you the whole way, at very reduced price; but your presence is wanting. And I want you to make some arrangement to keep Mariah forever. I want you to bring out my deed for the land, and the rest of my papers. Fail not. Come out, and may be a great advantage to you.
“ Peter Hendrix.”
Shortly after the receipt of that letter, Sanford Hendrix, who had been his favorite counselor, went to see his old father-in-law; and, on the 19th of August, 1848, the sons and sons-in-law went with or took him to a lawyer, who prepared a conveyance to them of his land in Bath, and a bill of sale of his slaves, for no other valuable consideration than their covenant to maintain him and to pay to each of four others of his numerous descendants two hundred dollars in three years. And the old man, without hearing, or himself reading, the whole of those documents, signed and acknowledged them for registration.
Peter Hendrix, rapidly declining into fatuity, died in the year 1853. And in September, 1854, this suit was brought, by about fifty of his pretermitted descendants, against the said alienees and others, for setting aside the *308 deed and bill of sale as fraudulent and voidable, on the alleged grounds of incapacitating imbecility and sinister influence — all of which the appellants denied.
After very elaborate and prolonged preparation, a jury, to whom the chancellor submitted the issue, found a verdict for the appellees, and the court confirmed it and adjudged the conveyances void.
Perceiving no substantial error in either giving or withholding instructions on the trial, we will dispose of two preliminary objections before we consider the decisive question whether the voluminous testimony authorized the judgment. These objections are — 1st. That all persons interested were not made parties; and, 2d. That the circuit court erred in overruling a motion to exclude so much of the depositions as testified concerning the mental and physical condition of Peter Hendricks after his acknowledgment of the conveyances. We do not consider either of these objections available. The persons interested in the object of the suit were so multitudinous as to have vexatiously prolonged and probably have altogether prevented a full hearing, unless, as was done by an order of court, a portion of them had been permitted to stand for all; and our Civil Code, as well as the modern common law, sanctioned the course adopted in this case. Nor did the circuit judge err in not excluding evidence showing the character and progress of the decay of the faculties of Peter Hendricks from the date of his acknowledgments to his death. Such testimony helped to illustrate his true if not apparent-condition at the time of acknowledgment, and prudently guarded against any other effect by the instruction that the proper solution of the issue as to capacity depended on his condition at that time.
*309 The jury having been empanneled only to help the chancellor to the right conclusion, their finding is not entitled to the more conclusive effect of an ordinary verdict; nevertheless, confirmed as it was by the chancellor, it commands consideration as an auxiliary support of the final judgment; and this combined and co-operative force seems to require for reversal a preponderating force of probability against the judgment more clear and decided than a simple judgment not so fortified, would have required. Whether there is such a preponderance is the principal and only remaining question.
As to the intellectual competency of Peter Hendrix to make a valid contract disposing of nearly his whole estate, as he did, on the 19th of August, 1848, the testimony is vexatiously conflicting. Numerically, the witnesses stand in the proportion of about three out of every five in favor of competency. But this disproportion is compensated by the character of the opposing witnesses, three of 'whom are medical doctors, and two of them his family physicians; and all concurring in the opinion that, when he left Kentucky, his mind had become too much impaired by age and disease to enable him to make such a contract prudently and bindingly; and such professional opinions, in the absence of overruling facts, are entitled to credence, while other mere opinions, unsupported by concurrent facts, have no legitimate weight.
The facts proved on both sides, while they tend to opposite conclusions, are not convincing on either side.
A comprehensive survey and thorough analysis of all the facts leave the scales of probability nearly equipoised; and if the preponderance be in favor of mental competency when self-poised, it is too slight to outweigh the verdict and judgment, and the intrinsic probability aris *310 ing from several facts, that the contract was not the spontaneous offspring of a free, rational, and self-moving mind.
Although there is no specific proof of the exercise of selfish influence by the appellants or any of them, yet the time and manner of removal to Indiana; the letter to Sanford Hendrix; his prompt visit to Indiana; the speedy gathering of the beneficiaries; the sudden revocation of the power to sell the land and slaves; the mode of procuring the conveyances; the isolation of the donor at a strange and dependent home ; and the significant fact that he made sons-in-law, instead of his own daughters, recipients of his bounty, conduce to the conclusion that imbecility and helpless age were successfully played on by filial power and artful influence.
Plowever this may be, considering the extreme old age of Peter Hendrix, his peculiar condition of body and mind, even as exhibited by the testimony of the appellants, and the strange character and gross and unexplained inequality of the disposition of his estate, this court cannot say that either fact, law, or justice preponderates in favor of the appellants, or, if at all, in such a degree as to require or authorize a reversal of the judgment.
Wherefore (Judge Peters not sitting), the judgment is affirmed.