# Louisville & Nashville Railroad Company v. Tuttle, By etc.

(Decided May 14, 1918.)

## Appeal from Clark Circuit Court.

1. Equity—Issue of Fact to Jury—Weight of Verdict.—Where there is presented in an equitable action a distinct legal issue which either party has the right to have tried by a jury, the verdict of the jury is conclusive and will not be disturbed unless flagrantly against the evidence; but where the action is purely equitable and the issue of fact has always been of equitable cognizance, the verdict of the jury is merely advisory and the chancellor may disregard the verdict and enter judgment in conformity with his view of the weight of the evidence.

2. Appeal and Error—Equity—Cancellation and Rescission—Issue of Fact to Jury—Weight of Verdict When Sustained by Chancellor.—In a suit to cancel a deed on the ground of the mental incapacity of the grantor, the issue of fact is of purely equitable cognizance, and when submitted to a jury, its verdict when confirmed by the chancellor is entitled to considerable weight, and the judgment will not be set aside on appeal, unless the verdict is clearly against the preponderance of the evidence.

3. Deeds—Mental Incapacity—Grantor—Issue of Fact to Jury—Verdict—Evidence.—In an action to cancel a deed on the ground of mental incapacity, evidence examined and held that the jury's finding of mental incapacity was clearly against the preponderance of the evidence.

B D WARFIELD. C. H. MOORMAN. J. M BENTON. JAMES J. DONOHUE and SHELBY, NORTHCUTT & SHELBY for appellant.

HAYS & HAYS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

In the year 1911, the Louisville & Nashville Railroad Company contemplated an extension of its Kentucky Division so as to connect with its line near Irvine, and the citizens of Clark county were anxious to have the new line built from Winchester to Irvine. T. J. Tuttle was the owner of a farm on Howard's Upper Creek in Clark county, containing about 300 acres and located on the proposed route. This farm is long and narrow and contains numerous ridges and hollows. At that time the land was worth $35.00 or $40.00 an acre. On October 6, 1911, the representatives of the railroad company, ac-

companied by a committee of citizens desiring the construction of the road, called on Tuttle and after an examination of the land and a general discussion of the matter, obtained from him an option by which he agreed to convey to the company the necessary right-of-way through his farm in consideration of $75.00 an acre and an agreement by the company to build a lawful fence on each side of the right-of-way. Afterwards a survey was made which necessitated a change in the right-of-way through the Tuttle farm. Thereupon the representative of the company accompanied by the deputy county clerk and other gentlemen, went to see Tuttle for the purpose of getting an option on the right-of-way as re-located. At that time Tuttle's enthusiasm over the proposed construction of the road seems to have cooled down and he refused to give a new option upon the same terms. However, he gave an option by which he agreed to convey the necessary land and the company agreed to pay therefor $75.00 an acre and $450.00 in damages, and further agreed to build two grade crossings and the necessary fencing. The company elected to exercise the last mentioned option and on May 27, 1912, Tuttle conveyed the right-of-way to the company for $1,423.50.

About two years later Tuttle brought this suit against the company to cancel the deed on the ground of mental incapacity and to recover damages in addition to those already received. Plaintiff's motion to transfer the action to the ordinary docket was overruled, but his motion for an issue out of chancery on the question of mental incapacity was sustained. On this issue the jury returned a verdict in favor of plaintiff. A judgment canceling the deed was then rendered and the company appeals.

Where there is presented in an equitable action a distinct legal issue, which either party has the right to have tried by a jury, the verdict of the jury is conclusive and will not be disturbed unless flagrantly against the evidence. On the other hand, where the action is purely equitable and the issue of fact has always been of equitable cognizance, the verdict of the jury is merely advisory, and the chancellor may disregard the verdict and enter judgment in conformity with his view of the weight of the evidence. Hill v. Phillips' Admr., 87 Ky. 169, 7 S. W. 718; Consolidation Coal Co. v. Vanover, 166 Ky. 172, 179 S. W. 43; Winchester, et al. v. Watson, et al., 169

Ky. 213, 183 S. W. 483. And in the latter case where the verdict of the jury is sustained by the chancellor, it is entitled to considerable weight, and the judgment will not be set aside on appeal unless the verdict is clearly against the preponderance of the evidence. Hendrix, &c. v. Money, &c., 1 Bush 306; Blakey v. Johnson, 13 Bush 200; Ford v. Ellis, 56 S. W. 512, 21 Ky. Law Rep. 1837. This is a suit to cancel the deed on the ground of the mental incapacity of the grantor, and the question being whether, in good conscience, the transaction should stand or be set aside, the issue of fact is of purely equitable cognizance. Hendrix v. Money, *supra;* Blakey v. Johnson, *supra;* McElwain v. Russell, 12 S. W. 777. That being true the only question to be determined is whether the verdict as confirmed by the chancellor, is clearly against the preponderance of the evidence.

According to the evidence for plaintiff, he suffered a stroke of paralysis some months after the execution of the deed which impaired the use of his limbs and his power of speech. He was 66 years of age when the deed was executed and 69 at the time of the trial. Plaintiff himself testified, and while it may be true that he talked with difficulty, the stenographer's transcript of his evidence shows a very lucid account of all the circumstances leading up to the execution of the deed, and a clear appreciation by plaintiff of the various items of damage. It also shows that in dealing with the contractors engaged in construction of the road, he took various steps to protect himself against any infringement of his rights. James W. Tuttle, a nephew of plaintiff, testified that plaintiff's mental condition at the time of the trial was just about the same as it had been for eight or ten years. Dr. Ishmael, who had been plaintiff's family physician for two years preceding the trial, testified that plaintiff was paralyzed in October, 1913, and that his tongue, speech and mental condition were thereby affected. This witness also testified that while he had had no business dealings with plaintiff prior to the stroke, plaintiff in his opinion was competent to attend to business. C. P. Bedford, who married a niece of plaintiff and had known plaintiff for a long time, testified that he had not noticed any change in plaintiff's mind for five or six years, with the exception of the fact that he had grown older, the same as other people. Thomas Bradley, plaintiff's nephew, testified that there had been a change in plain-

tiff's mental condition during the last five or six years. He further stated that plaintiff was not "as bright and as easy to get at things and he is kind of easily influenced." Dr. R. Allen testified that he had known plaintiff for 35 or 40 years, but had not seen him often in the last four or five years. He did not think that plaintiff was of a vigorous or strong mind at the time of the trial. His condition then was worse than it had been prior thereto. He did not know that plaintiff had suffered a stroke of paralysis in 1913.

On the contrary, Messrs. L. L. Pendleton and V. W. Bush, who represented the company in obtaining the option, detailed the circumstances leading up to the execution of the deed and testified that they saw no indication of mental incapacity on the part of plaintiff. Squire B. C. Fox, a neighbor of plaintiff and a relation by marriage, testified that he had known plaintiff for 50 years and that at the time the options were given and the deed executed plaintiff was fully capable of understanding his business. D. B. Hampton, who was present when the first option was given, testified to the same effect. A. H. Hampton, cashier of the Citizens' Bank, testified that he had known plaintiff for 25 or 30 years; that plaintiff did business at the bank, and on Jan. 10, 1912, paid off two notes on which J. W. Tuttle was surety, amounting to $1,231.46. At that time plaintiff had sufficient mind and memory to know and attend to his business. It will thus be seen that although the burden of showing his mental incapacity was on plaintiff, he did not introduce a single witness who testified to any facts showing that his mind was so impaired at the time the deed was executed that he was incapable of understanding and appreciating his property rights and the effect of the conveyance. The most that can be said is that there was some evidence that his mind was impaired at the time of the trial and that two witnesses gave it as their opinion that his mental condition had not changed for four or five years, although in the meantime he had suffered a stroke of paralysis. On the contrary, Dr. Ishmael, plaintiff's own witness, stated that prior to the stroke of paralysis, plaintiff had mind enough to attend to business, and the numerous witnesses for the defendant, who were either present during the negotiations resulting in the conveyance or had business dealings with him about that time, all testified to facts showing that

plaintiff understood his property rights and the nature and effect of the conveyance and was fully capable of protecting himself. Indeed the chief argument made to sustain the verdict of the jury is based on plaintiff's appearance at the trial, a condition not shown by the record. This argument loses much of its force when we take into consideration the fact that plaintiff was th suffering from a stroke of paralysis which he receiveu several months after the execution of the deed and about two years before the trial, and the mere fact that he then appeared old and feeble and talked with difficulty is not sufficient to overcome the positive testimony that his mind was not impaired when the deed was executed. We therefore conclude that the verdict of the jury was clearly against the preponderance of the evidence. It follows that the chancellor should have disregarded the verdict of the jury and have refused to cancel the conveyance.

Judgment reversed and cause remanded with directions to enter judgment in conformity with this opinion.