## Campbell v. Napier, et al.

(Decided November 22, 1918.)

## Appeal from Perry Circuit Court.

1. Appeal and Error—Review—Verdict in Equitable Action.—Where there is presented in an equitable action a distinct legal issue which either party has the right to have tried by a jury, the verdict of the jury is conclusive and will not be disturbed unless flagrantly against the evidence.

2. Equity—Verdict—Conclusiveness.—Where the action is purely equitable and the issue of fact has always been of equitable cognizance, the verdict of the jury is merely advisory and the chancellor may disregard the verdict and enter judgment in conformity with his view of the weight of the evidence.

3. Appeal and Error—Review—Verdict in Equitable Action—Conclusiveness.—Where the verdict of the jury on a purely equitable issue is sustained by the chancellor, it is entitled to considerable weight and the judgment will not be set aside on appeal unless the verdict is clearly against the preponderance of the evidence.

4. Equity—Verdict—Conclusiveness.—In a suit to establish and enforce a trust, the creation and terms of the trust present issues of fact which are purely equitable, as to which the verdict of a jury is merely advisory.

5. Trusts—Establishment and Enforcement—Evidence.—In a suit to establish and enforce a trust in personal property, evidence examined and held that the verdict of the jury in favor of the trust was not clearly against the preponderance of the evidence.

6. Trusts—Trustee—When Liable for Interest.—Where a trustee receives $1,000.00 in gold to be delivered to the children of the trustor when they reach their majority, and soon after the trustor's death repudiates the trust and uses the trust fund in his own business and for his own profit, he is chargeable with the interest from that time.

7. Appeal and Error—Trust—Accounting—Judgment Awarding Interest—Propriety.—Where the evidence showed that shortly after the death of the trustor the trustee used the trust fund in his own business and for his own profit, a judgment awarding interest from the first of January following the death of the trustor will not be disturbed, since any doubt as to the time when the trustee began to use the fund for his own profit will be resolved against him.

W. C. EVERSOLE and J. B. EVERSOLE for appellant.

HOGG & JOHNSON and F. J. EVERSOLE for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Alleging that the defendant, A. D. Campbell, received from their father, John Campbell, $1,200.00 in gold, which he agreed to hold in trust and deliver to them when they attained their majority, Maud Napier and Chloe Morgan brought this suit to establish the trust and to recover the money. The chancellor ordered the issue of fact submitted to a jury, which found that John Campbell had delivered to the defendant the sum of $1,000.00 to be kept by him for the use of the plaintiffs. Thereupon the chancellor approved the finding of the jury and rendered judgment in favor of plaintiffs for $1,000.00, with interest from January 1, 1900, until paid. Defendant appeals.

The evidence, which was heard practically without objection, is as follows: Maud Napier, who was about twelve years old when her father died, testified that about a year before his death he had $1,200.00 in gold which he kept in a safe in his home. One day while her uncle Adam was there her father directed her to get this gold and give it to her uncle. The money was in a pocket made of striped bed ticking and was of the kind sometimes worn by women by tying a string attached to the pocket around the waist. When she went into the room, her uncle Adam had her father's gun. Her uncle Adam then left, taking the gun and carrying the gold in the pocket. She asked her father why he gave the gold to her uncle, whereupon her father told her that her uncle would take it and keep it for the children until they became twenty-one years old. Calvin Stacy testified that he was at the home of John Campbell a short time before he died. The defendant, John Campbell and James Campbell, the father of John Campbell, were there. Old man James Campbell remarked that Adam wanted to borrow $1,000.00. While witness was in the room with Adam, John and James Campbell, John told him to go out as they wanted to talk privately about a matter. Directly Adam Campbell came out of the room carrying a Winchester rifle and a striped bed ticking pocket in one hand, which looked to have gold or silver in it. E. C. Couch testified that defendant stated to him, some time after the death of John Campbell, that John's children said he had some of their money; that he did have some of their money but that he expected to keep it until the proper time. Defendant, however, did not state the amount of money that he had. Thomas Colwell testi-

fied that he met Adam Campbell a short time after John Campbell's death and that Adam stated that he had about $1,000.00 of John's money and was going to use it. F. J. Eversole, who wrote John Campbell's will, testified that after writing the will he asked John Campbell if he had any other property. John Campbell replied that he had mentioned all the property he desired mentioned in the will but that he had about $1,000.00 or $1,200.00 that he had placed in safe hands to be given to his children when they became of age. This he did not want mentioned in his will. There was also evidence to the effect that when John Campbell died, defendant was a man of small means. Soon after John Campbell's death he entered into the mercantile business and became and is now a prosperous merchant.

On the other hand, the defendant denied that his brother John had ever given him $1,000.00 or $1,200.00 or any sum to keep for his children. He further stated that in the year 1891, his brother John did have $1,000.00 in gold, which, together with $200.00 in greenbacks, he deposited at the National Bank of London. R. H. McKee, a former bookkeeper of that bank, testified that a deposit of $1,240.00 was made about that time. Subsequently $240.00 were withdrawn. These were the only amounts withdrawn, but the records of the bank from November 31, 1891, to 1907 were destroyed by fire. From 1907 on, no account was carried in the name of John Campbell. James Baker also testified that he was with John Campbell when he made the trip to London and deposited the money. Other testimony was heard but it was not very material.

Where there is presented in an equitable action a distinct legal issue, which either party has the right to have tried by a jury, the verdict of the jury is conclusive and will not be disturbed unless flagrantly against the evidence. On the other hand, where the action is purely equitable and the issue of fact has always been of equitable cognizance, the verdict of the jury is merely advisory, and the chancellor may disregard the verdict and enter judgment in conformity with his view of the weight of the evidence. However, where the verdict of the jury on a purely equitable issue is sustained by the chancellor, it is entitled to considerable weight, and the judgment will not be set aside on appeal unless the verdict is clearly against the preponderance of the evidence. Louisville

& Nashville Railroad Company v. Tuttle, 180 Ky. 558, 203 S. W. 308. Trusts have always been of equitable cognizance, and the creation and terms of a particular trust present issues of fact which are purely equitable. That being true, the only question for determination is whether the verdict as approved by the chancellor is clearly against the preponderance of the evidence. After carefully examining the evidence, we conclude that such is not the case.

But it is contended that the defendant should not have been charged with interest except from the time that plaintiffs attained their majority. The basis of this contention is that the trust only contemplated the delivery to each of the plaintiffs of her share of the gold when she became twenty-one years of age, and that the defendant was not in default until those periods of time were reached. There might be some merit in this contention if the defendant, as held by the chancellor, had not repudiated the trust immediately upon the death of the trustor and used the trust fund from that time on in his own business and for his own profit. Lehmann v. Rothbarth, 111 Ill. 185; James v. Davis, 5 Dana, 127; In re Stott, 52 Cal. 403; St. Paul Trust Co. v. Kittson, 62 Minn. 408, 64 N. W. 74; 39 Cyc. 424. While the evidence does not fix the precise time when this occurred, it does show that it occurred soon after the trustor's death, and since any doubt on the question should be resolved against the defendant, we see no reason to disturb that portion of the judgment awarding interest from the 1st of January next succeeding the death of the trustor.

Judgment affirmed.