CASE 98—PETITION EQUITY—MAY 19.

# Magowan v. Branham, &c.

95  581
f124 145

### APPEAL FROM MENIFEE CIRCUIT COURT.

1. ACTION TO QUIET TITLE.—It seems to the court that the allegations of the petition in this case, if sustained by proof, are sufficient to enable plaintiffs to maintain their action so far as it is in the nature of a bill of peace. But even if not, as defendants in their answer and counter-claim prayed for their title to be quieted, adverse to plaintiff, and tendered an issue involving question of superior title, it was competent for the lower court to try and determine it.

2. ADVERSE POSSESSION.—It is immaterial whether the deed under which plaintiff claims was effectual to pass a good title, as the grantee, from the date of it, took possession of the land by tenants and held and claimed it adversely to extent of his boundary for a period long enough to give him a possessory title. And the deed is, therefore, now to be considered with reference simply to the extent of such boundary described and claimed by him.

3. THE RECITAL IN THE DEED THAT THE LAND CONVEYED IS PART OF A CERTAIN SURVEY, MUST YIELD TO CALLS, about the correctness of which there can be no question, and the deed will be held to embrace land included within such calls, although outside the survey referred to.

4. CONSTRUCTION OF DEED.—By "the upper cliffs on each side Glady Creek," to which the land conveyed was stipulated to run, was manifestly meant cliffs of the tributary branches as well as those of the main creek, because the cliffs, by reason of the peculiar formation of that particular region, constituted plain, and in fact the only practicable, landmarks.

WOOD & DAY FOR APPELLANTS.

1. In construing a deed, the intention of the parties at the time of making the deed should prevail, and technicalities should give way to such intention. (6 Ky. Law Rep., 568; 9 Ky. Law Rep., 523; 10 Ky. Law Rep., 779, 852; 60 Ind., 337; 122 Ill., 817; 38 Cal., 481; 25 Cal., 449; 61 N. Y., 631; 82 Ky., 379.)

2. The object of the description of lands in deeds is to furnish the means of identification, and where the lands can be located by it, it is sufficient. (108 Ind., 130; 73 Ind., 407; 89 Ind., 330.)

3. The description should be liberally construed, and a defect in one part may be corrected or supplied by accuracy employed in another part. (29 Ind., 1; 101 Ind., 310; 6 Mon., 432.)

4. Monuments control, and an omission of State, county or grant does not invalidate the conveyance. (119 Ind., 181; 16 Ohio, 22; 30 Am. Dec., 734; 35 Am. Dec., 374.)

THOMAS TURNER and C. CYRUS TURNER for appellees.

1   The general description in the deed from Duckham to Magowan, that
    it conveyed the lands in the Dean Timmons patent, must prevail, the
    particular description being vague and uncertain.  (Notes to Heaton
    v. Hodges, 30 Am. Dec., 735; Ela v. Carroll, 9 Am. Dec., 46; Foss
    v. Cri-p, 20 Pick., 121; Henderson v. Mack, 82 Ky., 379.)

2.  The deed from Duckham to Magowan is void for uncertainty.  (Ham-
    ilton v. Fugate, 81 Ky., 366.)

3.  The marshal's tax deed is void.  One who claims under such a deed
    must show that all the steps necessary to a valid sale were taken, and
    the recitals of the deed are not sufficient for that purpose.  (Pryor v.
    Hardwick, 15 Ky. Law Rep.; Terry v. Blight, 3 Mon., 271; John-
    son, v. McIntyre, 1 Bibb, 295.)

4.  Appellants have not shown either paper or possessory title.  Nor have
    they shown any actual possession, without which they can not main-
    tain trespass *quare clausum fregit*.  The act of 1854 is not in force.
    (Hillman v. Hurley, 82 Ky., 626; 6 Ky. Law Rep., 682.)

5.  To maintain a bill of peace plaintiffs must show both title and actual
    possession.  (Kincaid v. McGowan, 87 Ky.); and they must also
    allege that the claim of the defendants is hostile to theirs.  (Camp-
    bell v. Disney, 13 Ky. Law Rep., 919.)

6.  By occasionally herding or grazing stock on the land plaintiff did not
    obtain possession or title.  (Moss v. Scott, 2 Dana, 275; Lillard v.
    McGee, 3 J. J. Mar., 552; Hinton v. Fox, 3 Litt., 384; Caskie v.
    Lewis, 15 B. M., 32; Wickliffe v. Ensor, 9 B. M., 259.)

7.  Deeds under which a defendant has entered upon land, although invalid,
    can be used to show the boundary to which he claimed.  (Clark v.
    Jones, 16 B. M., 126; McMillen v. Hutchinson, 4 Bush, 613; Taylor
    v. Buckner, 2 Mar., 19; Lander v. Reynolds, 3 Litt., 14; Shackle-
    ford v. Smith, 5 Dana, 240.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

W. C. Magowan and others, devisees of James P. Ma-
gowan, brought this action against William Branham
and others, alleging they were owners and in
actual possession of a tract of land described in their
petition; that defendants, all of whom are insolvent,
unlawfully and without right entered upon said land and
cut and removed a large number of saw-logs, and are giv-
ing out in speeches they own said land and claiming it
adverse to plaintiff, whose title is being thereby clouded.

The relief prayed for is an injunction restraining defendants further cutting and removing timber, damages for value already cut and removed and judgment quieting their title.    On the same day they brought another action to recover possession of saw-logs cut and not then removed from the land.

In their answer, made a counter-claim, two of the defendants, Vanarsdale and Carter, allege they are owners and in possession of a large tract of land described, which includes the land sued for, and pray for judgment quieting their title.    The two actions were consolidated and transferred to equity, and by the final judgment dismissed.

It seems to us, though argued by counsel for appellees otherwise, that the allegations of the petition, if sustained by proof, are sufficient to enable plaintiffs to maintain their action so far as it is in the nature of a bill of peace. But even if not, as defendants, in their answer and counter-claim, prayed for their own title to be quieted, adverse to plaintiffs, and tendered an issue involving questions of superior title, it was competent for the lower court to try and determine it.

It appears that about the year 1786 the State of Virginia issued four patents for mountain land situated in what is now Menifee County, one to John Carnan for about 20,000 acres, one south of and adjoining it to Dean Timmons for about 22,000 acres, one west of and adjoining it to Roberts for about 18,000 acres, and one south of the latter and west of Timmons' survey to John Carnan for about 10,000 acres, each tract being in form a parallelogram.    The line dividing the two first-named surveys is S. 81 W., as is the one dividing the two last-named, though not an extension of the other, being farther south.

The line which divides the survey of John Carnan of 20,000 acres and Roberts' survey, and also the Timmons and John Carnan survey of 10,000 acres, is S. 8 E. The two latter, being south of the others, extend beyond and are each bisected by Red River, the general course of which is perhaps west, or a little south of west. A tributary, called Glady Creek, rises inside the John Carnan survey of 20,000 acres, and after flowing several miles through it, in a general course southwest, crosses the dividing line S. 81 W., and flows diagonally through the Timmons survey, finally intersecting Red River, within limits of the John Carnan survey of 10,000 acres, a little west of the line S. 8 E.

It appears from the map, filed as evidence, that all, or nearly all, the branches or tributaries of Glady Creek rise north of it and inside the John Carnan survey of 20,000 acres. The tract in controversy, as well as the larger tract claimed by defendants, is situated on these tributaries, and the land is valuable principally for timber and minerals; for the valleys of Glady, as well as of its tributaries, are very narrow and bounded by sandstone cliffs from one hundred to one hundred and fifty feet high, having very few gaps or breaks.

There is filed in this case a deed from John McCalla, Collector of Internal Revenue, to Thomas Duckham, executed in 1839, for the whole of the John Carnan survey of 20,000 acres, which, as recited in the instrument, was made in pursuance of a public sale in 1816, under act of Congress of the United States, by collector of direct taxes. We need not determine as to validity of that deed, nor inquire how Duckham acquired title to the Dean Timmons survey, to which, as well as the John Carnan survey,

he seems to have set up claim at an early day, and of which he continued to sell parcels to various persons without question until all was disposed of, so far as this record shows. There is evidence showing that more than sixty years before commencement of these actions, James S. Magowan, father of James P. Magowan, set up claim to parts of the four surveys mentioned, taking possession thereof by tenants. But neither the precise locality of the tract or tracts claimed by him, nor evidence of paper title are shown in this record. But whatever claim he had was, about 1840, transferred to his son, James P. Magowan, and February 2, 1842, Thomas Duckham conveyed to him a described boundary of land by deed, the proper construction and meaning of which the lower court seems to have regarded as decisive of this case. The land conveyed is described therein as follows: "All that boundary of land as follows, to-wit: Beginning at Powell Rose line on Glady creek, in the county of Montgomery (now Menifee), and running on each side of Glady's creek, up the banks thereof as far as the upper cliffs on each side of said creek, and up said creek to James Cock's line, the said land being a part of Dean Timmons' survey of 22,000 acres. Said Duckham reserves to himself all minerals and mines in the bowels of the earth in said boundary of land and the use of the timber included in said boundary, and a mill seat on said creek, the said tract of land lying and being in the county of Montgomery on the waters of Red River. The said Duckham hereby sells and conveys the same to said Magowan."

The lower court seemed to be of opinion that the land thus conveyed was entirely within boundary of the Dean Timmons survey, and to that extent restricted plaintiffs'

right of recovery. We think the court was correct in assuming that to all the land included within boundary thus described, wherever it may bè, plaintiffs have title. For without determining whether the deed was effectual to pass a good title, the evidence is satisfactory to us that James P. Magowan, from the date of it, took possession by tenants of the land and held and claimed it adversely to extent of his boundary for a period long enough to give him a possessory title. The deed is, therefore, to be now considered with reference simply to the extent of such boundary described and claimed by him. The evidence shows that as early as 1849, he being on the land designated, claimed a boundary that included not only the land now in controversy, but very much more, and that he then had tenants on the land so claimed, as there had been for many years previously. For he had, prior to that date, purchased other tracts from Duckham, and his father had held and claimed other tracts also.

In regard to the actual boundary intended by the parties to the deed of 1842 to be conveyed, it appears from the evidence that Powell Rose's line crosses Glady Creek at or near, though below, mouth of Salt Creek, a tributary, and not very far south of the dividing line between John Carnan and Dean Timmons' survey, and that continuing the case up and on each side of Glady Creek to James Cock's line, necessarily locates very much greater portion of the land inside the Carnan survey than inside the Timmons' survey, which is comparatively little. As such would be the result of following calls for objects and according to courses well known to the parties, we are bound to conclude that the recital the land was inside the Timmons' survey was a mistake, if it be inter-

preted so as to mean wholly inside. And as the grantor had, or claimed, title to that part of the land conveyed which is inside the Carnan survey, as well as that inside the Timmons survey, making such incorrect recital yield to calls, about the correctness of which there can be no question, does not materially affect the rights of either party, but, on the contrary, conforms the deed to their evident intention.

We think it is also clear that Magowan intended to buy and Duckham intended to convey all the land lying on Glady Creek and branches west of Cock's line, north of Powell Rose's line and east of the line S. 81 E., between the Carnan and Roberts' surveys, for two principal reasons. First, Duckham then neither owned nor claimed any other land in the southwestern corner of the Carnan survey except the boundary now claimed by plaintiff, and it was not practicable or worth the expense of dividing it, by running and making a line across the cliffs. Second, by " the upper cliffs on each side of Glady Creek," to which the land was stipulated to run, was manifestly meant cliffs of the tributary branches, as well as those of the main creek; because the cliffs, by reason of the peculiar formation of that particular region, constituted plain, and in fact only practicable, landmarks.

It seems to us the evidence shows that James P. Magowan, in virtue of the deed made to him in 1842 by Thomas Duckham, claimed to a well-defined boundary, including all the land in controversy, and by tenants had actual and adverse possession thereof from that date long enough to acquire title.

The defendants claim under a quit-claim deed from one Frisby, executed in 1874. But he had no paper title, nor

does the evidence show he ever had actual possession of any part of the land in dispute long enough to acquire title; and as showing defendants had no faith in the title he attempted to convey, they procured patents to be thereafter issued for different parcels of the land, all of which were void, because for land within the John Carnan survey. And in 1876 the various patentees, including wives of defendants, went through the farce of all uniting in one deed to the defendants, for the land thus severally claimed under void patents. In our opinion plaintiffs have shown a valid title to all the land in dispute and right to recover it, together with damages for the alleged trespasses.

Wherefore, the judgment of the lower court is reversed and cause remanded for judgment quieting plaintiffs' title, and further proceedings consistent with this opinion.