CASE 90—ACTION TO RECOVER LAND—MAY 7.

## Mann, &c., v. Cavanaugh.

APPEAL FROM PENDLETON CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFFS APPEAL. REVERSED.

HEARSAY EVIDENCE—PEDIGREE—RECITAL IN ANCIENT DEED—ADVERSE
    POSSESSION—RES GESTAE—DECLARATION IN DISPARAGEMENT OF
    TITLE—EVIDENCE AS TO DECLARATIONS OF PERSONS SINCE DECEASED
    —INSTRUCTIONS TO JURY.

Held: 1. Where plaintiff claimed title under a patent to C., a
    deed -conveying the land in question, which recited that the
    grantors were heirs of C., was admissible in evidence for plain-
    tiff without other evidence of the death of C. or of the heirship

Mann, &c. v. Cavanaugh.

of the grantors than the recitals of the deed, almost 80 years having elapsed since the deed was executed and recorded.

2. Where defendant claimed title by adverse possession to the land sued for, and it was shown that the ancestor of plaintiffs, though living near the land, for many years after defendant took possession, took no steps to recover the land, it was competent for plaintiffs to prove that their ancestor was in poor health, mentally and physically, for 10 years prior to his death, and for that reason was dissuaded by plaintiffs from suing for the land, though what plaintiffs said and did in procuring him to abandon his intention to sue was inadmissible.

3. The declaration of defendant that the land in dispute was a vacant strip of land was admissible against him, being a declaration in disparagement of his title.

4. What the defendant said and did with reference to giving the right to others to enter upon the land in dispute and cut trees upon it was admissible in his favor as a part of the *res gestae*, the conversations having occurred within the disputed boundary.

5. The declaration of plaintiff's ancestor that the fence was located "partly by guess, but was on the line, or very near it," was admissible for defendant, if proved by a competent witness.

6 Defendant was not a competent witness for himself to prove a declaration of plaintiffs' ancestor in disparagement of his title.

7. The court erred in instructing the jury to find for defendant if they believed he "entered upon the farm described as his in the evidence in this case, and that he continuously, openly, and adversely lived upon the same, and claimed same, including the land in dispute, as his own, and exercised acts of ownership on same by cultivating it and cutting timber off it up to the fence" for 15 years before suit was brought, as the court thereby authorized the jury to find for defendant if he exercised ownership over the whole tract by cultivating any part of it, and cutting timber off any part of it up to the fence on the disputed land, when the law is that plaintiffs' constructive possession of the uninclosed land by reason of their legal title could be defeated by defendant only to the extent of his actual adverse possession.

W. M. & C. S. RARDIN AND FRYER & BARTON, FOR APPELLANTS.

There is no question in this case as to the paper title of the appellant to the strip of land in controversy under the facts proven. Hence we conclude that appellants' claim of title to the Commonwealth is well established and proven and ought to prevail, unless appellants are barred by the statute of limitations.

We claim that the court erred in not allowing the appellants to prove by witness, F. P. Mann, that the father of appellants, from whom appellants derive title had been in such infirm health for two years before his death (which occurred in 1895) as to be unable to prosecute an action for the recovery of the land, which we think was competent to rebut the presumption which might have arisen in the minds of the jury that he had conceded the right of defendant to enter on the land and clear it up. The defendant relying wholly in this case upon his adverse holding for 15 years.
holding for 15 years.

The court also erred in refusing to let this witness testify, that appellee told him in August, 1898, that the "land in dispute was a vacant strip of land." This was clearly competent to show the estimate which appellee placed upon his claim at that time and that he then had no right or claim to it. We contend further that the court erred in refusing to allow appellant, W. S. Race, to testify that Richard Mann, the father of appellants told him in 1889, at the time appellee was clearing the disputed land, that he was satisfied the defendant was clearing his land, and that he must get a surveyor and find out where his true line was.

We claim also that the court erred in allowing incompetent testimony to be introduced by appellee to which appellants objected, and which seriously operated to the prejudice of appellants.

### AUTHORITIES CITED.

Greenleaf on Evidence, secs. 171 and 172, vol. 1, 108 and 109, Enos v. Tuttle, 3 Conn. Rep., Civil Code, sec. 606, sub sec. 2; Hoskins v. Cox, 2 B. M., 307; Creighler v. Wheeler, 12 B. M., 183-4; Rogers v. Moore's heirs, 9 B. M., 303-4; Pearson v. Baker, 4 Dana, 323.

LESLIE T. APPLEGATE, FOR APPELLEES.

(No brief.)

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

This was an action in ejectment, the appellants, heirs at law of Richard Mann, Jr., deceased, having sued to recover of the appellee the possession of a strip of land in Pendleton county. Appellants claim title under a patent from the Commonwealth of Virginia to John Crittenden, bearing date the 15th day of April, 1786. Appellants are

admitted to be the sole heirs of Richard Mann, Jr., deceased, who is shown to have taken the land as a devisee under the will of Richard Mann, Sr., deceased, which was probated about 1846. Richard Mann, Sr., acquired his title under a deed executed by Randolph Raily, Jr., attorney in fact for John J. Crittenden and others, named as heirs at law of John Crittenden, the patentee. This power of attorney appears to have been executed on the 26th of June, 1822, and it recites the death of John Crittenden, and the fact that the parties executing the power of attorney are the heirs and representatives of the said decedent. It was objected on the trial that the admission of the patent, of the power of attorney to Raily, and the deed from Raily, attorney in fact, to Mann, were all inadmissible because of lack of identification of heirs of John Crittenden, and consequently because of lack of connection between appellants and Crittenden. It was argued for appellee that the fact of relationship of those executing the power of attorney should have been shown by other and satisfactory evidence, and that their own statement of that fact is not sufficient, and is inadmissible. We dispose of this question first, because it is essential that it be done to enable us to determine whether the substantial rights of the appellants have been prejudiced by the rulings of the court, and to which they are objecting on this appeal; for it must be manifest that, if the appellants had no title legally proven in the circuit court, it is immaterial what error that court may have permitted in the course of the trial in other respects. It was not proven in the circuit court whether the patentee, John Crittenden, was dead, or whether those executing the power of attorney were dead at the time of the trial, but we may fairly presume that after this great lapse of time—

now nearly eighty years since the execution of the power
of attorney, and more than a century since the patent was
granted and issued—all of them are dead. The fact as
to who were the heirs at law of John Crittenden, the pat-
entee, and the fact of his death, are matters of pedigree.
1 Greenl. Ev., section 104. From the necessities of the
case, matters of this character have always been allowed
to be proved by hearsay or reputation. Declarations of
those shown to be related to the family in question are
admissible to prove the facts stated above as constitut-
ing the pedigree. Prof. Greenleaf states the rule with
respect to this subject as follows (Greenl. Ev., section
104): "The correspondence of deceased members of the
family, recitals in family deeds, such as marriage settle-
ments, description in wills, and other solemn acts, are
original evidence in all cases where the oral dec-
larations of the parties are admissible. . . . Re-
citals in deeds other than family deeds are also
admitted, when corroborated by a long and peace-
able possession according to the deed." In Fort v. Clarke,
1 Russ., 601, the grantors recite the death of the sons
of John McCormick, tenants in tail male, and de-
clared themselves heirs of the bodies of his daughters,
who were devisees in remainder. In Fulkerson v. Holmes,
117 U. S., 396, (6 Sup. Ct., 784,) (29 L. Ed., 918), which was
an action in ejectment, it appears that the plaintiffs in
the circuit court claimed under a patent issued from the
Commonwealth of Virginia to Samuel Young, and under-
took to show title derived from Young by exhibiting a deed
from Samuel C. Young to plaintiff's ancestor, dated July,
1819. This deed recited that Samuel Young, the patentee,
had died intestate, and that Samuel C. Young, the grantor,
was his only child and heir, and that the title to said lands

had vested in him. The original deed was admitted in evidence under the doctrine applicable to the admission of ancient documents, it being shown to have been more than thirty years old, and having been produced from a custody satisfactory to the trial court. Said the court: "The question is, therefore, fairly presented, whether the recitals in the deed of Samuel Young to John Holmes, to the effect that Samuel Young, the patentee, had died intestate, leaving one child only, namely, the said Samuel C. Young, the grantor, were admissible in evidence against the defendants who did not claim title under the deed." "The fact to be established is one of pedigree. The proof to show pedigree forms a well-settled exception to the rule which excludes hearsay evidence. This exception has been recognized on the ground of necessity; for, as in inquiries respecting relationship or descent, facts must often be proved which occurred many years before the trial, and were known to but few persons, it is obvious that the strict enforcement in such cases of the rules against hearsay evidence would frequently occasion a failure of justice. Tayl. Ev. (Ed. 1872), section 571. Traditional evidence is, therefore, admissible. . . . The rule is that declarations of deceased persons who were *de jure* related by blood or marriage to the family in question may be given in evidence in matters of pedigree. Jewell v. Jewell, 1 How., 219, (11 L. Ed., 108), and other cases cited. A qualification of the rule is that, before a declaration can be admitted in evidence, the relationship of the declarant with the family must be established by some proof independent of the declaration itself. Citing cases. But it is evident that but slight proof of the relationship will be required, since the relationship of the declarant with

the family might be as difficult to prove as the very fact in controversy. . . . As the deed in which the recital was made was entitled to be admitted in evidence, it stands upon the same footing as if its execution had been proved in the ordinary way." The court then proceeded to hold that the declaration in the deed was the declaration of Samuel C. Young, the grantor, as much so as if the said Samuel C. Young had appeared in court and made it. The court further found that such similarity in the name of Samuel C. Young to his alleged ancestor, Samuel Young, the patentee, after the lapse of so great a time, was entitled to weight; and the further fact that Samuel C. Young assumed, as the son of Samuel Young, to convey the landed estate of the latter, and his grantee having for more than sixty years claimed title under his conveyance, the right of Samuel C. Young to make the conveyance having never been, so far as it appears, questioned or challenged by any other persons claiming under Samuel Young, was declared to be a circumstance of weight; and the court concluded that after the lapse of sixty-one years the circumstances shown were sufficient to prove that Samuel C. Young was of the family of Samuel Young, and that the declarations of the former, deliberately made in an ancient writing, signed, sealed, witnessed, acknowledged, and recorded, to the effect that the declarant was the only child and heir of Samuel Young, and that the latter was dead, was of right admitted in evidence as toending to prove the facts so recited. So, in the case at bar, after the lapse of nearly eighty years, the grantee of the declarant heirs of John Crittenden, and those claiming under that grantee, having held, without controversy or molestation, so far as this record discloses, the landed estate of the said patentee for that length of time, added

to the similarity of the names, will be accepted as con-
clusive upon the state of record presented that the de-
clarants were related to the said John Crittenden, pat-
entee, and that, therefore, their statements made in an
ancient and solemn deed signed, witnessed, and recorded
more than three-quarters of a century ago, proper evidence
of which is exhibited in the record, are sufficient and satis-
factory proof of the death of the said John Crittenden,
of their relationship to him, and that they are the sole
heirs of his landed estate.    It therefore follows that ap-
pellants exhibited a complete chain of title to the land
in controversy, deducible from the Commonwealth of Vir-
ginia, upon which they were entitled to recover, unless
their right has been tolled by the adverse possession
and claim of appellee.

The answer in the case first traversed the allegations
of title in the plaintiffs, and then pleaded that the de-
fendant was the owner of all the land described in the
petition, and sought to be recovered.    The defendant's
claim of title is alleged to be based upon an adverse pos-
session, actual and continuous for more than fifteen years
before the institution of appellants' suit.    The facts shown
in the record are that appellants' ancestors had lived upon
and occupied the tract of land of which that in dispute
is a part under the deeds above named, and had so occu-
pied it and claimed it for more than sixty years before the
institution of this suit; that Richard Mann, Jr., had, twen-
ty-five or more years ago, built a fence some rods from his
line as shown by the calls of his deeds, leaving outside
of his inclosure the strip of land which is now in contro-
versy.  He continued, however, to exercise such acts of
ownership over it as cutting from it rail timber on several

occasions, and renting it for a sugar camp, and claiming it as his own. About 1878 appellee purchased the adjoining tract of land from one Hightower, and took a deed which he says he caused to be surveyed before he took possession, and that, as surveyed, its line adjoining Mann's extended to the fence above named, which would make it include the land in dispute. A surveyor named Ellis, who is shown to have surveyed the lines of the land in dispute at least twice within the last several years, and who testified in the record, shows that the lines of appellee's deed do not embrace the controverted land. Appellee testified and introduced one or two other witnesses, who also testified, that he inclosed some part of the land in dispute as early as 1883,—more than fifteen years before the institution of the suit; but that some part of the land was uninclosed woodland, and had never been inclosed. The great preponderance of the proof, however, was to the effect that the inclosure by appellee was not earlier than 1888, the suit having been filed in January, 1899. During the progress of the trial, the following exceptions were taken by appellants to the introduction of testimony: One of the plaintiffs below was testifying, and he offered to prove that Richard Mann, Jr., was in very poor health for ten years prior to his death, both mentally and physically; had often talked of bringing suit for the land, but by reason of his condition the witness and the other heirs talked him out of the idea, believing that the worry and excitement of the trial would hasten his death, and that the said Richard Mann, by reason of his mental and physical condition, was not able to look after a suit for said land. This evidence was excluded by the trial court. It was shown that Richard Mann lived within a quarter of a mile of the land in dispute, and had so lived for many

years, and it was doubtless argued that that circumstance was incompatible with his claim of ownership, when he was making no objection to Cavanaugh's continued en- croachment upon the disputed territory. The offer of ap- pellants was doubtless for the purpose of rebutting the presumption raised by the silence and apparent acquies- cence of their ancestor. We are of opinion that the court properly excluded so much of that testimony as embraced what the witness and other heirs of the decedent said in urging or procuring him to do in abandoning his idea of a suit, but we think that the fact of the decedent's state of health, mental and physical, and the reason for his non- action, were relevant as material circumstances which the jury should have been permitted to consider in connection with the proven fact of his proximity to the disputed lands and apparent acquiescence in appellee's taking possession. F. P. Mann, a witness, and one of appellants, while testi- fying, offered to prove that appellee in a conversation held about August, 1898, told the witness that the land in dispute was a vacant strip of land. This was rejected by the court, and this ruling, we think, was error, upon the ground that declarations of a claimant in disparagement of his title are always relevant when offered against him. 1 Greenl. Ev., section 109. When appellee was testifying as a witness in his own behalf at the trial, he was permitted to state what he had said to others and had done with reference to giving the right to them to enter upon the land in dispute, and cut trees upon it, the conversations having occurred within the disputed bound- ary. This was objected to by appellants, but we think was competent as a part of the *res gestae*, and is generally so admitted. While testifying, the appellee further stated that on the occasion above referred to, when he ran the

lines of his deed in 1878, Richard Mann, Jr., came to them, and had a talk near the fence above mentioned. Appellee was then asked what Mann said in that conversation about the fence and the land. Appellants objected, and, the objection being overruled, the witness was permitted to answer and say that the decedent said that "the fence was put there partly by guess, but was on the line, or very near it." Undoubtedly the statement is a relevant one had it been proven by competent evidence. We have just held that the statement of a claimant in disparagement of his title may be shown in a controversy between him and others, or between his privies and others, but, of course, this statement must be proven by witnesses who are competent to testify concerning it. The narrator being dead at the time of the trial, appellee could not be permitted to testify for himself concerning this statement of the decedent. Section 606, Civil Code Practice. At the conclusion of the trial, the court gave instructions numbered from 1 to 5 inclusive, which are not questioned. However, on motion of appellee, the court gave the following instruction, marked "A," which was objected to by appellants, the objections were overruled, and they excepted: "If the jury believe from all the evidence in the case that the defendant, Cavanaugh, entered upon the farm described as his in the evidence in this case, and that he continuously, openly, and adversely lived upon same, and claimed same, including the land in dispute, as his own, and exercised acts of ownership on same by cultivating it and cutting timber off it up to the fence on the south side of the land in dispute for fifteen years before January 23, 1899, then they must find for said defendant." It will be observed that this instruction is susceptible of a construction by the jury that, if appellee entered upon

any of the land embraced by his deed from Hightower, and that he continuously, openly, and adversely lived upon same, and claimed same, including the land in dispute, and exercised acts of ownership over the whole tract by cultivating any part of it, and cutting timber off of any part of it up to the fence on the disputed land, the jury should find for the appellee. This was manifestly an erroneous view, and the one doubtless, taken by the jury in rendering their verdict; for under this instruction the jury would be justified in finding a verdict for the defendant, although he had not had the possession of any part of the disputed land for fifteen years. This is not a correct statement of the law. Appellee showed no title save the deed from Hightower, and Hightower is not shown to have had any title to the land in dispute. The constructive possession of the uninclosed land attached to the legal title, which, so far as this record discloses, was that of appellants; and this constructive possession could be defeated only by an actual adverse possession for the statutory period, and then only to the extent of defendant's actual possession. Wherefore the judgment is reversed, and cause remanded for a new trial under proceedings consistent herewith.

Petition for rehearing by appellee overruled.