## Vance v. Gray, et al.

(Decided February 14, 1911.)

### Appeal from Jackson Circuit Court.

Land—Quantity—Boundary—Title—Actual Occupancy for Forty Years Under Deed.—This is a controversy between the parties hereto as to the boundary and quantity of land claimed and owned by the appellees. Held, Upon a consideration of the pleadings, proof and report of the surveyor the appellees have a good title to the land claimed by them, and that they have fortified their position by adding to their constructive possession an actual occupancy for more than forty years, and while the outside boundary of the land claimed to be covered by their deeds are not very well defined they were laying claim to it under their deed, and that the chancellor in adjudging their title good reached the right conclusion.

HAZELWOOD & JOHNSON for appellant.

E. E. HOGG for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

On January 28, 1871, Thomas M. Bennett and wife conveyed to a daughter, Sarah A. Bennett, for the stated consideration of $100, a boundary of land supposed to contain one hundred acres. On the same day, for $150, they conveyed to a son, James R. Bennett, two tracts of land, one containing fifty acres, more or less, and the other one hundred acres. Also, on the same day, they conveyed, for the stated consideration of $616.66 2-3, to Margaret J. Gray, a daughter, the following described boundary:

"Beginning at the mouth of the Rocky Fork, thence down the creek with the meanders to Smith's line, thence with Smith's line to the top of the ridge, thence to the beginning so as to contain two hundred acres by survey also two hundred acres on the north side of the War Fork of Station Camp Creek. Beginning at two pines corner to Pinkston's hundred acre survey, thence with the same S 58 E 95 poles to two spotted oaks, thence so as to include two hundred acres by survey out of Ambrose survey of five hundred and fifty acres survey with the appurtenances thereunto belonging unto said Margaret J. Gray her heirs and assigns forever and the said Thomas M. Bennett and Mary Bennett, his wife, do hereby warrant and defend the aforesaid land against the title claim of all persons whatever, etc."

On February 25, 1887, Sarah A. Bennett, who had in the meantime married J. R. Durham, conveyed her tract to J. P. Vance. On October 23, 1897, Margaret J. Gray and her husband conveyed a part of her land, supposed to contain one hundred and ten acres, to Henry C. Gray, and another part, supposed to contain one hunderd acres, to W. T. Gray. Henry C. and W. T. Gray were the children of Margaret Gray. Each of the Gray boys built upon the land deeded to him by his mother, cleared portions thereof, and, while they were so occupying it, James P. Vance, conceiving that he was the owner of the land of which they were in possession, brought suit to quiet his title thereto. The Grays answered, denying that they were claiming title to any of plaintiff's land, and alleged that they were the owners thereof, and asked that their title to the same be quieted.

Thereafter, the county surveyor for Johnson county made a survey of the land conveyed by Thomas M. Bennett to his three children; but, as the trial court could get little aid from his survey, he directed R. S. Blakeman, of Barbourville, Knox county, Kentucky, to go upon the ground, make a survey, and ascertain the boundary lines to the deeds made by Thomas M. Bennett to his three children, and report to court. This was done, and from such report it is apparent that the grantor, Thomas M. Bennett, did not have as much land as he thought he did, and that the lines to these deeds overlapped, so that the boundary called for in the Gray deed includes a part of the land conveyed by the Sarah A. Bennett deed. In a supplemental report, the surveyor suggests that, as there is a shortage in the whole number of acres sought to be conveyed by Thomas M. Bennett, this shortage should be borne ratably by the respective claimants.

Upon a consideration of the pleadings, proof and report of the surveyor, the court was of the opinion that the Grays had a good title to the land claimed by them, and he therefore dismissed plaintiff's petition and entered a judgment quieting the title to the respective lands claimed by the Grays, as set out in the pleadings. From that judgment this appeal is prosecuted.

For appellees it is urged, that the judgment must stand for two reasons: First, because it is a suit to quiet title, and appellant, in his pleadings and proof, neither claims nor shows possession of the land in controversy; and second, because immediately upon receipt of their deed, their father and mother settled upon this land and have held it ever since, claiming the two hundred acres under their deed, while neither appellant nor his vendor has ever been in the actual possession of any portion of this land.

The first proposition, as advanced by appellees, is sound, and would be tenable here but for the fact that they have made their answer a counterclaim against appellant and sought to have their title quieted. This brings the title before us, and, under the authority of Magowan v. Branham, et al., 95 Ky., 581, and Johnson v. Farris, 140 Ky., 435, decided October 27, 1910, we will settle the question of superiority of title as it is here on the counterclaim of appellees.

Upon the second ground relied upon by appellees to uphold the judgment we are furnished no precedent

among the vast number of adjudicated cases in this State upon the subject of land titles. The converse of the question was before us in the case of Smith & Preston v. Prewitt, 2 A. K. Marshall, 155. In that case there had been a grant of two thousand acres to one Barnes, and a similar grant to one Boyd. From the calls in the patents, each took from his outside boundary line, and it was evident that the inside lines joined. The boundary covered by the two patents was largely in excess of four thousand acres. Each owner insisted that the other should have his two thousand acres run off to him and that he should be adjudged the owner of the balance. The court, upon the state of the record, adjudged to each his two thousand acres, the surplus to be divided equally between them. This case was followed in the later case of Respess v. Parmer's Heirs, 5 J. J. Mar., 648, where the dispute arose over the sale of a patent supposed to contain a thousand acres, five hundred having been sold to one man and five hundred to another. The deeds called for unmarked corners on the dividing line, but for distances equal to the length of the patent line. The tract contained more than a thousand acres, and the court held that the surplus should be divided equally between the claimants.

In each of these cases the outside lines were well defined, and the intent in each was to convey all the land between the outside boundary lines, and the court, in order to effectuate this intent, divided equally the surplus land. But here we have a shortage in the land. The lines of the Gray deed evidently lapped over into the other two tracts and include a considerable portion of each, and especially of the tract now claimed by appellant. If we were back at the parting of the ways and the original grantors were before us, and the conditions had not been changed, the case might possibly be worked out along the lines mapped out in the case of Smith & Preston v. Prewitt, supra. But here, after the lapse of forty years, during which time conditions have changed, the property passed into other hands, and improvements been made thereon, it will readily be seen that upon no just or equitable principle could the rule adopted in those cases be applied. Mrs. Gray and her husband paid more than four times as much for their land as appellant's vendor paid for his, and yet they received only a fourth more land. The discrepancy in price is accounted for by

Wiliam Gray, who testifies that he was to receive his choice of five hundred acres out of the survey supposed to contain five hundred and fifty acres. It is fully made to appear that, after his wife received her deed, they took actual possession of the land and have occupied and held it ever since; while appellant and his vendor have never been in the actual possession of any of it, and now claim only through their deeds. Under the deeds from their remote vendor, Bennett, they each had constructive possession of the land covered by the deeds. The Grays have fortified their position by adding to their constructive possession an actual occupancy for more than forty years. And while the outside boundaries of the land claimed to be covered by their deed are not very well defined, they were laying claim to it under their deed, and, in our opinion, in adjudging the title thereto good, the chancellor reached the right conclusion.

Judgment affirmed.