## Hopson v. Cunningham, et al.

(Decided November 19, 1914.)

### Appeal from Trigg Circuit Court.

Adverse Possession—Nature and Requisites—Character and Elements of Adverse Possession in General.—The actual possession of land (where the legal title holder is not in actual possession under his deed, may be acquired by an entry upon and actual inclosure or other equivalent physical occupancy of a portion of the land claimed, accompanied by a claim to additional land not so held by actual inclosure or other equivalent physical occupancy, in which event, if the claimant enters under color of title his paper title is evidence of the extent of his claim as to such additional lands, or if he enters without color of title, the extent of such additional claim may be evidenced by a well-marked line or well-defined boundary. But, where the legal title holder of the land upon which such entry is made, is in actual possesssion under his deed, then the entrant will be deemed to acquire actual possession of only so much of the land as he disseizes the legal title holder of, by actual inclosure or other equivalent physical occupancy.

MAX HANBERRY for appellant.

JOHN W. KELLEY and JOHN W. KING for appellee.

Opinion of the Court by Judge Hannah—Affirming.

W. H. Hopson and E. A. Cunningham are the owners of adjoining farms in Trigg County, Hopson's farm lying to the north of Cunningham's, and the line between them is a straight line.

In 1888, W. J. Fuqua, who then owned the farm of which Cunningham is now the owner, built a rail fence along the north side of his farm. It was not on an agreed line, nor was it a joint fence; but in the erection of the fence, Fuqua probably intended to place it upon the line between the two farms. It was constructed, however, in such a manner that it departed from a straight line, the

departure being over to the south on to Fuqua's side of such line, and being greatest just west of the middle of the line and lessening as it approached the ends of the line or corners, thus leaving a small strip of land on the outside of the rail fence south of a straight line between the two farms.

Fuqua's son, who inherited the land, and J. B. Downs to whom he sold it, always supposed, however, that the old rail fence was straight, as did also J. M. Boyd and Sam Leneave, successive owners of the farm on the north.

In 1911, Sam Leneave, then the owner of the farm on the north of the Fuqua farm, contracted to sell and convey it to W. H. Hopson. At this time, E. A. Cunningham had become the owner of the Fuqua farm. After the contract was made between Leneave and Hopson, Cunningham notified Leneave that the old rail fence was not straight, and that he wanted to have it straightened.

Hopson, learning of this, tried to induce Leneave to execute to him a deed calling for the old rail fence, but Leneave refused to convey except by the calls of his deed from Boyd, i. e., a straight line between the two farms; and a deed so made was accepted by Hopson.

Cunningham built a wire fence on the line, and Hopson brought this action in ejectment against him in the Trigg Circuit Court to recover the strip between the old rail fence and the fence which Cunningham built on the line.

Hopson asserted ownership of this strip by virtue of title of record and also by adverse possession, both of which claims were denied by the defendant, Cunningham.

Upon the trial, Hopson introduced no title papers to establish his claim of ownership of the strip in controversy by title of record. He was not, therefore, so far as this record shows, the holder of the legal title to the strip in question.

As to his claim of ownership by adverse possession, the former owners of the Hopson farm, Boyd who sold it to Leneave, and Leneave who sold it to Hopson, both testified that they supposed the old rail fence was on the line and claimed down to the fence, but that had they known it was not on the line, they would not have claimed to the fence. However, neither of these former owners of the Hopson farm testified to facts showing that plaintiff and those under whom he claims ever had the actual

adverse possession of the strip of land in controversy; nor did any witness for the plaintiff so testify.

If the old rail fence had been constructed by one of appellant Hopson's vendors, so as to run over on to the land now claimed by Cunningham, and that inclosure had been accompanied and followed by an adverse claiming of the land so inclosed, the possession so acquired would in due time have ripened into title.

But the rail fence here in question was constructed by a former owner of the appellee Cunningham farm, presumably upon land of which he was the legal titleholder, although the record does not so show. At least, the constructive possession of the strip of land in controversy attached to the legal title; and so far as the record shows, the legal title thereto was not in Hopson's vendors.

Now the manner in which Hopson and his vendors could have acquired the actual, adverse possession of this strip of land, such as would in due time have ripened into title, depends upon whether the legal title-holder of the strip was in actual possession under his deed.

In this State, the actual, adverse possession of land of which the legal title-holder is not in actual possession under his deed, may be acquired by an adversary entrant, by his enclosure or other equivalent physical occupancy thereof; or such adversary entrant may reduce to possession by enclosure or other equivalent physical occupancy, a portion of the land entered upon, in which event he may extend his claim and possession in either of two ways, i. e., if he be a mere trespasser, he may hold to a well-marked line, or well-defined boundary; or, if he enter under color of title, his paper title is evidence of the extent of his claim outside of that portion of the land so reduced to possession by actual inclosure or other equivalent physical occupancy. Richie v. Owsley, 137 Ky., 63, 121 S. W., 1017; Taylor & Crate v. Burt & Brabb Lumber Co., 109 S. W., 349, 33 R., 191; Fuller v. Mullins, 143 Ky., 639, 137 S. W., 243; LeMoyne v. Meadors, 156 Ky., 832.

But, where the legal title-holder occupies any portion of the land covered by his deed, his possession is actual, co-extensive with the boundaries stated in the conveyance; and in such case, the adverse entrant is deemed to acquire actual possession of only so much of the land as he disseizes the legal title-holder of, by an actual inclosure or other equivalent physical occupancy. Richie v.

Owsley, *supra*; Mann v. Cavanaugh, 110 Ky., 776, 62 S. W., 854, 23 R., 238; Phillips v. Beattyville M. & T. Co., 88 S. W., 1058, 28 R., 12; Meade v. Ratliff, 133 Ky., 411, 118 S. W., 271; Fuller v. Mullins, *supra;* Hall v. Blanton, 25 R., 1400, 77 S. W., 1110; Combs v. Stacy, 147, Ky., 222, 144 S. W., 24.

It is not shown in the record whether Cunningham is the holder of the legal title of the strip of land in controversy or not, so that it is impossible to say whether the legal title holder of the strip has been in possession under his deed or not. But be the fact in that respect what it may, the evidence for the plaintiff, Hopson, fails to show that he and those under whom he claims, ever effected a physical appropriation of the strip or any portion thereof by inclosure or other equivalent physical occupancy. Plaintiff seems to have devoted his entire attention, in the introduction of evidence, to the claim and possession of the defendant, and wholly neglected to establish his own claim.

Having failed to support his claim of ownership by title of record, as well as his claim of ownership by an adverse possession ripened into title, the plaintiff did not make out his case. Had the defendant asked it, he was entitled to a directed verdict. There was nothing to submit to the jury.

The judgment is affirmed.