## Lipps, et al. v. Turner.

(Decided May 13, 1915.)

### Appeal from Clay Circuit Court.

1. Quieting Title—Scope and Extent of Relief.—Where in an action to enjoin trespasses upon realty, the defendant asserts owner-ship of the land in himself, it is proper for the chancellor to adjudicate the issue of superiority of title although the plaintiff prove no possession.

2. Evidence—Proving Conveyance of Real Estate by Secondary Evidence.—Conveyances of land are not proven by parol; if the deed or record thereof is in existence, it should be produced; if such production is impossible, the reason therefor should be established as the basis for the admission of secondary evidence of the contents of the deed; and that being done, it is incum-bent to show the contents of the lost instrument.

3. Adverse Possession—Possession Under Color of Title—What Constitutes Color of Title.—In order that the deed under which an adverse entry is made may constitute color of title and thereby afford a basis for the extension of possession, it must describe the land conveyed with reasonable certainty.

4. Adverse Possession—Right Acquired Under Deed Containing In-adequate Description of Land Conveyed.—Where the deed under which an adverse entry is made contains an inadequate descrip-tion of the land conveyed, the entrant will be restricted to such portion of the premises as he has reduced to possession by in-closure or other equivalent physical occupancy.

D. K. RAWLINGS for appellants

WILLIAM AYRES for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

This is a controversy involving the ownership of a tract of land in Clay County. The trial court adjudged appellee Turner, plaintiff below, to be the owner of the tract, except certain small portions which were ordered to be surveyed, the record failing to show a definite de-scription thereof, and which were adjudged to be the property of the appellant Lipps, defendant below. From so much of the judgment as awarded to plaintiff any of the land defendant appeals; and from so much of the judgment as awards defendant any of the land plaintiff appeals.

1. It is insisted by appellant that appellee's action was to quiet title, and that, as he failed to prove pos-

session, the petition should have been dismissed; but as appellee by his counter-claim set up ownership of the land in himself, it was proper for the chancellor to adjudicate the issue of superiority of title. Clark's Heirs v. Boyd, 152 Ky., 234, 153 S. W., 227; Hall v. Hall, 149 Ky., 817, 149 S. W., 1128; Vance v. Gray, 142 Ky., 267, 134 S. W., 181; Johnson v. Farris, 140 Ky., 435, 131 S. W., 183; Magowan v. Branham, 95 Ky., 581; Bryant v. Wood, 90 Ky., 530.

2. The plaintiff claimed the land in controversy as a part of a patent for 206,800 acres, issued June 14, 1872, to John H. Cheever, from whom it passed by divers *mesne* conveyances to plaintiff, Turner. It is contended by appellant that this patent is void for uncertainty of description, and that it was not properly located by the surveyors. This contention of appellant is the same as that which was considered and disposed of by this court adversely to appellant's contention in the case of Uhl v. Reynolds, 23 R., 759, 64 S. W., 498.

3. Plaintiff also claimed the land in controversy under a patent issued July 8, 1847, to Felix J. Gilbert; and this being senior to the Cheever patent and included therein, plaintiff was bound to connect himself with the Gilbert patent in order that he might prevail as to the land in controversy within the boundaries of that patent.

It is appellant's contention that plaintiff failed to show devolution of title from Felix J. Gilbert to William Hoskins, plaintiff's remote vendee.

In respect of this matter the record exhibits the following state of facts: John Gilbert was the owner of two patents comprising eighty acres at the forks of Double Creek. Felix J. Gilbert was the patentee of the one hundred-acre tract above mentioned, and also of a four hundred-acre patent lying adjoining and above the John Gilbert tract. He was a son of John Gilbert, and died before his father's death. John Gilbert by his will devised to the widow and heirs of Felix J. Gilbert "the lands theretofore ceded to them, known by the rest of the heirs." The widow and children of Felix J. Gilbert thereafter held the eighty acres formerly owned by John Gilbert, as well as the four hundred-acre patent and the one hundred-acre patent owned by Felix J. Gilbert.

By his will, Felix J. Gilbert devised his "home place" to his son, Moses S. Gilbert. Felix left five children. Two of these died without issue. In 1871, after

the death of Moses S. Gilbert, the other two heirs of Felix J. Gilbert brought a suit to partition the lands as to which their father died intestate. There were twenty-eight such tracts. Neither the eighty acres formerly owned by John Gilbert, nor the one hundred-acre patent, nor the four hundred-acre patent, were mentioned in that suit. The widow and children of Moses S. Gilbert were then holding the tracts mentioned. From these facts but one inference is deducible, and that is that the lands mentioned in the will of John Gilbert as "ceded" to Felix J. Gilbert were the eighty-acre tract at the forks of Double Creek; that the "home place" of Felix J. Gilbert, which was by him devised to Moses S. Gilbert, comprised the eighty acres and the hundred-acre patent and the four hundred-acre patent, the whole forming one solid boundary of land extending from the forks of Double Creek up both forks thereof.

At decretal sale in a suit brought to settle the estate of Moses S. Gilbert, William Hoskins became the purchaser of this "home place" subject to the widow's dower allotment, on Sept. 14, 1877. He had on March 4, 1872, acquired the dower allotment from the widow. He lived on this "home place" until April 13, 1891, when he conveyed it to Churchill, trustee, and it then passed by *mesne* conveyances, unnecessary to be here detailed, to plaintiff, Turner.

Appellant raises some question as to the proper location of this Felix J. Gilbert 100-acre patent; but we think the proof abundantly establishes that the location as made by the surveyors was the proper one.

Thus it is shown that the plaintiff, Turner, produced and established a title of record deducible from the Commonwealth, to the lands claimed by him in his petition.

4. Defendants attempt to claim the land in controversy under and by virtue of a certain patent issued to one Robert Sizemore, June 23, 1884, on a survey dated August 12, 1877. This patent is junior to both the Cheever and the Felix J. Gilbert patents under which plaintiff claims.

Defendants produced a deed from Martha Forester to them, dated March 29, 1907; and a deed in partition from Nancy Sizemore to Martha Forester, of the same date; also a deed dated February 20, 1890, from Ed Sizemore to Nancy Sizemore and Martha Forester; but no conveyance is shown from Robert Sizemore to Ed Sizemore.

Nancy Sizemore, widow of Robert Sizemore, testified that she and her husband had executed a deed to Ed Sizemore; but conveyances of land cannot be thus proven.

If the deed or record thereof was in existence, it should have been produced. If such production was impossible, the reason therefor should have been established as the basis of the admission of secondary evidence of the contents of the deed; and that being done, it was still incumbent on defendants to show the contents of the lost instrument. Combs v. Krish, 84 S. W., 562, 27 R., 154; Jones v. Tennis Coal Co., 94 S. W., 6, 29 R., 623; Fuller v. Keesee, 104 S. W., 700, 31 R., 1099.

The doctrines relating to junior and senior claimants are, therefore, not here applicable.

5. It is shown in proof that Ed Sizemore in 1880 entered upon the land here in controversy, embraced in the Cheever patent, but outside the Felix J. Gilbert patent (then owned by Hoskins), and built a house and cleared up some land. He thus initiated an adverse possession of so much of the land as he subjected to a physical occupancy, but having neither marked line nor color of title, his possession extended no further. Hopson v. Cunningham, 161 Ky., 160, 170 S. W., 522.

6. But, when Nancy Sizemore and Martha Forester, on February 20, 1890, received the conveyance from Ed Sizemore, there was a house on the land; and there was an inclosure on it at that time, which remained thereon down to the time of the institution of this action.

Now, the rule is that the actual adverse possession of land of which the legal title holder is not in actual possession under his deed, may be acquired by an adversary entrant by his inclosure or other equivalent physical occupancy thereof; or such adversary entrant may reduce to possession by inclosure or other equivalent physical occupancy, a portion of the land entered upon, in which event he may extend his claim and possession in either of two ways, i. e., if he be a mere trespasser, he may hold to a well-marked or well-defined boundary; or, if he enter under color of title, his paper title is evidence of the extent of his claim outside of that portion of the land so reduced to possession by actual inclosure or other equivalent physical occupancy. Hopson v. Cunningham, *supra.*

But, if it be a deed, under which such entry is made, in order that it may constitute color of title and thereby afford a basis for the extension of possession, the deed must not only be of record, but must describe the land conveyed with reasonable certainty. Burt & Brabb Lumber Company v. Sackett, 147 Ky., 232; Sackett v. Burt & Brabb Lumber Company, 150 Ky., 748.

The deed from Ed Sizemore to Martha Forester and Nancy Sizemore contains the following language descriptive of the land conveyed:

"Beginning at a hickory and beech tree on the east side of said creek, a stake, corner to a 50-acre survey made for Thomas Piercefield; (2) thence with the lines of same, S. 25 W. 33 poles to a stake and corner to the same; (3) S. 20 W. 50 poles to a stake and corner to the same; (4) thence S. 47 W. 40 poles to a stake in said line, and in a line of a 200-acre patent made for F. J. Gilbert; (5) thence with the reverse line of the said 200 acres, S. 12 W. 125 poles to 4 beeches and maple on the east side of said branch, corner to the said 200 acres; (6) thence with another line of the said 200 acres S. 59 W. 100 poles to a stake; *thence with a conditional Ed Sizemore and James C. Hoskins square with the lower end of the Piercefield.*"

While the Robert Sizemore patent is not mentioned in this deed, the first six calls of the deed are identical with the first six calls of the patent, and these calls are on the west side of the patent. These calls, though not constituting a straight line, run one general course, and they constitute the base line of the Sizemore survey. At the end of the sixth call the patent calls turn from an almost west course to an almost south course. It is two and a half miles approximately from the end of the sixth call in the patent around the other three sides back to the beginning corner; and in lieu of these calls, sixteen in all, in the deed, we have only the language "thence with a conditional Ed Sizemore and James C. Hoskins square with the lower end of the Piercefield." No evidence of any kind do we find in the record to explain what this means, although the grantor, Ed Sizemore, as well as the grantees, Martha Forester and Nancy Sizemore, all testified. In view of these facts, there is no escape from the conclusion that this deed does not contain a description of the land conveyed sufficient to constitute it color of title and the basis for extending the possession of the adversary entrant beyond the actual physical occupancy.

7. It appears from the record that only a portion of the inclosure above mentioned has existed more than fifteen years before the institution of this action in 1907; part of this was inclosed in 1894; but as the deed under which the plaintiff claims was not executed until 1895, the conveyance was champertous as against whatever inclosure then existed.

It is further disclosed by the record that in 1894 another house was built and clearing made by Dan Sizemore under a lease from Martha Forester and Nancy Sizemore, down the branch from the one above mentioned. And the plea of champerty will likewise prevail as to this parcel.

8. The remaining question is the objection of appellee upon his cross-appeal to the judgment upon the ground that defendants having neither pleading nor proof showing the exact description of these inclosures, their claim to them should fail.

The defendants by their pleadings claimed more than the inclosed parcels, but having failed to establish such claim by proof as to all the land so claimed, they did show that they were entitled to part of the land claimed by them, and we think the chancellor properly ordered that a survey should be made for the purpose of obtaining an accurate description of them. It is the spirit of equity procedure to retain jurisdiction until the matter in dispute is thoroughly and finally determined.

Affirmed.