## The Haven Malleable Casting Co. v. W. E. Caldwell Co.

(Decided January 9, 1912.)

Appeal from Jefferson Circuit Court. (Common Pleas, Third Division.)

1. Contract—Manufacturing Castings—Duration of Contract.—A manufacturer offered on May 29, a dealer to make and furnish to him for a year such castings as he needed. The offer was accepted on June 10 with certain modifications which were agreed to on June 12; Held, that the contract was for a year from June 12, and for castings to be made and delivered before June 12 of the next year.

2. Writing—Contracts—Parol Evidence—Lost Paper.—To admit parol evidence of the contents of a writing which is in the papers of the party offering the evidence, it must be shown that diligent search has been made for it, and that the difficulty of finding it is sufficient to warrant the court in concluding that the paper is lost.

3. Failure to Get Goods—Criterion of Damages—Evidence.—A witness should not be allowed to state generally how much he has been damaged by the failure to get certain goods, no criterion of damages being indicated, but he should be required to state facts and give the amount of damages under the proper criterion of damages.

W. PRATT DALE for appellant.

FRED FORCHT, JR. for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

The W. E. Caldwell Company is a corporation doing business in Louisville, Ky. It constructs water tanks and sells to others the material for making these tanks. The Haven Malleable Castings Company is a corporation doing business at Cincinnati, Ohio. It runs a foundry and makes castings. The Caldwell Company used in its business a large number of castings which had to be made according to patterns furnished by it. In the year 1905, a correspondence took place between it and the Castings Company which finally resulted in a contract by which the Castings Company agreed to furnish it certain castings needed in its business for a year at $3.25 per 100 pounds, f. o. b. cars or boat Cincinnati. On May 19, 1906, the Caldwell Company sent to the Castings Company an order which that company declined to fill on the ground that it could not be filled within the year specified in the contract. The Caldwell Company insisted that the Castings Company was under obligations to fill all orders made within the year; the latter company insisted that it was only bound to fill such orders as could be filled within the year. It offered to fill the order at $4.00 per 100 pounds. The Caldwell Company declined to pay this, and also declined to pay a balance of $370.00 it owed for goods delivered, claiming that it had been damaged by the breach of the contract. This suit followed in which the Castings Company sued the Caldwell Company for $370.00 due from the goods delivered, and the Caldwell Company pleaded a countercliam of $800.00 damages for the breach of the contract. On the first trial of the case there was a verdict in favor of the Castings Company for the amount of its claim, less a credit of $72.00. The court granted the defendant a new trial and on a second trial

of the case there was a verdict in favor of the Caldwell Company for $600.00 on its counterclaim. The court subtracted from this the $370.00, and gave judgment against the Castings Company for the balance with cost. From this judgment it appeals.

The first question to be determined in the case is the proper construction of the contract between the parties, which was made by letters passing between them. The correspondence is as follows:

Cincinnati, May 26, 1905.

W. E. CALDWELL Co.,
    LOUISVILLE, KY.
Gentlemen:

We thank you for your favor of the 24th, regarding Tank Lugs, and are pleased to quote you your requirements for the next twelve months at $3.35 per 100 pounds, f. o. b. cars Cincinnati. Terms: Net 30 days. We hope to be favored with the business, and remain,

    Yours Truly,
    The Haven Malleable Castings Company.

THE HAVEN MALLEABLE CASTINGS COMPANY,
    DANE ST. & C. H. & D. RY.
      CINCINNATI, O.
Gentlemen:

Answering yours of the 26th, inst. beg to say that we could probably close a deal with you on the basis of $3.25, which we are offered by another concern.

    Yours Truly.
    W. E. Caldwell Co.

Cincinnati, May 29, 1905.

W. E. CALDWELL & Co.,
    LOUISVILLE, KY.
Gentlemen:

Replying to your favor of the 27th, will say, while the price we named you was low, we will furnish you lugs needed next year at $3.25 per 100 pounds, f. o. b. cars Cincinnati, net 30 days, and hope to receive your business.

    Yours Truly.
    The Haven Malleable Castings Co.

Louisville, Ky., June 10, 1905.

The Haven Malleable Castings Co.,
        Cincinnati, O.

Gentlemen:

The writer has just returned and finds your favor of the 29th ultimo, stating that you will enter into contract to furnish us our malleable lugs castings to supply our needs for the next twelve months at $3.25 per hundred, f. o. b. Cincinnati. In response to same will say that we will accept your proposition with the understanding that you are to furnish these lugs as fast as we will require them, not exceeding 10,000 castings per month of any one size, and that you will make shipments within forty-five days from receipt of specifications of all orders we send in, we to furnish you these orders in lots of not less than 500 of a size, in $\frac{1}{2}$, $\frac{5}{8}$, $\frac{3}{4}$, "$\frac{7}{8}$ and 1," and 200 of the "$1\frac{1}{8}$" size; and that these are to be first class castings, and properly annealled, and all castings tested before they are shipped; shipments to be made by river, and on receipt of your acknowledgment, by wire, of this letter as being satisfactory, we will have the patterns for the $\frac{7}{8}$inch expressed, and the balance sent you by freight.

Yours Truly,
W. E. Caldwell Co.

Cincinnati, O., June 12, 1905.

W. E. Caldwell Co.,
        Louisville, Ky.

Gentlemen:

Your letter is satisfactory; send on the patterns.

Haven Malleable Castings Co.

Cincinnati, O. June 12, 1905.

W. E. Caldwell Co.,
        Louisville, Ky.

Gentlemen:

We have your favor of the 10th, and have wired you as follows: "Your letter is satisfactory; send on the patterns." We note what you say regarding deliveries, and will say it will always be possible to commence deliveries in 3 to 4 weeks after receipt of order, but whether or not we could deliver the entire quantity specified in 45 days as you mention, would depend entirely upon the length of time it would take to mold orders, as we do not know the condition of your patterns or the number on agate. We will say, however, we will put your patterns in the sand and run them continuously until all are cast.

We also note you specify river shipments. We presume this refers particularly to all castings for which you are in a great hurry. We presume we would have the option of shipping via L. & N. when you are not in a hurry for castings, as it would save us quite a haul.

Yours truly,

The Haven Malleable Castings Co.

On receipt of the letter of June 12th from the Castings Company, the Caldwell Company sent on the patterns, and no trouble ensued until they sent the order of May 19, 1906. There is some difference between the parties as to when the year to which the contract applied, began. It will be observed that the Castings Company offered on May 29 to furnish "lugs needed during next year at $3.25 per 100 pounds;" that this offer was accepted by a letter of June 10 which added certain qualifications, and that these qualifications were agreed to by the telegram of June 12. There was no contract between the parties until June 12, and we think the fair meaning of the correspondence taken as a whole, is that it was a contract for one year from that date.

It will also be observed that by the letter of the Caldwell Company of June 10 accepting the offer of the Castings Company, it was stipulated that shipments were to be made within 45 days from receipt of specifications, and that by the letter of June 12 written by the Castings Company that company says it will always be possible to commerce deliveries in 3 to 4 weeks after receipt of order, but whether the whole quantity could be delivered in 45 days would depend entirely upon the length of time it would take to mold orders. Reading the two letters together we conclude that they mean that the Castings Company should commence deliveries in from 3 to 4 weeks after receipt of order, and were to deliver the entire quantity specified in 45 days unless an unusual length of time would be required to mold the order. It was a contract for a year. The Castings Company wrote the Caldwell Company it would furnish the "lugs needed during the next year at $3.25 per 100 pounds f. o. b. cars Cincinnati." When the lugs were placed in the cars at Cincinnati under the contract they were at the risk of the Caldwell Company; the obligation of the Castings Company was to furnish lugs needed during next year. It was not a contract for lugs needed for 13½

months, but only for lugs needed during the year. It would be manifestly not in keeping with the spirit of the contract for the Caldwell Company to have ordered up to the monthly limit on the day before the contract expired. This would be to increase the obligation of the Castings Company from a year to 13½ months. We, therefore, conclude that as the contract originated in a proposition from the Castings Company to do a certain thing this thing which it proposed to do is the limit of its obligation, and that it could not be required under the contract to fill any order for goods which could not in the usual course of business be manufactured and placed on the cars during the term of the contract or before June 12, 1906. The proof offered by the defendant was to the effect that the goods had to be manufactured and could not be manufactured and delivered after the receipt of the order and before the expiration of the contract. The court excluded this evidence. In this he erred. The defendant is not responsible for failing to deliver any goods which could not in the usual course of business be manufactured and delivered before June 12, 1906.

There was sufficient evidence on the trial that the Castings Company had notice that the Caldwell Company was a dealer in these goods, and ordered them for sale as well as for its own use. Its letter heads which were above the letters it wrote the Castings Company contained this information, and this was sufficient notice of the fact to it. The Castings Company is, therefore, liable for such damages as the Caldwell Company sustained by reason of its not being able to fill the orders it received.

The orders being in writing should be produced before parol evidence of their contents is admitted, unless they are shown to be lost. The fact that the defendant may have some difficulty in finding the letters among its correspondence is not sufficient to warrant parol evidence of their contents. To warrant the admission of parol evidence of the contents of an order, it must be shown that diligent search has been made for it, and that it can not be found. The difficulty in finding it must be so great as to warrant the court in holding that the paper is lost.

The witnesses testifying for the Caldwell Company as to the amount of damages it sustained should not be permitted to say in general terms that it was dam-

aged in the sum of $800, but should be required to state the facts and show what the damage is under the law. The witness should not be left to testify as to the law and facts but the question should be so framed as to enable the witness to tell what the damage is under the criterion of damages governing the case. The court in its instruction indicated to the jury what was the criterion of damages, and the witness should be required to tell the amount of damages under the proper criterion.

Judgment reversed and cause remanded for a new trial, and further proceedings consistent herewith.