## Mullens, et al. v. McCoy.

(Decided June 2, 1916.)

### Appeal from Martin Circuit Court.

1. Quieting Title—Supplying Lost Deed—Relief in Equity.—A court of equity has jurisdiction to afford relief by way of supplying an unrecorded lost deed to quiet title, and at the same time to afford such further relief as may be incident to the supplying of the lost deed.

2 Lost Instruments—Evidence—Burden of Proof.—The burden of proof is on the person claiming on a lost instrument, to establish its execution and contents, and where the lost instrument is not admitted, he must clearly establish its execution and former existence; but the general rules of evidence apply in an action to establish such lost instrument.

3. Adverse Possession—Lost Instruments—Title.—A title, which, after the supplying of a lost unrecorded deed, runs back to a patent senior to that under which a conflicting title is claimed, is superior to the latter title.

4. Adverse Possession—Character of—Title Created.—Actual adverse possession of the land in controversy, to a well defined marked boundary, satisfactorily shown by the evidence to have continued in the present holder and his vendors continuously for fifteen years before the institution of the action, will create in him superior title to the land.

5. Deeds—When Champertous and Void.—Under section 210, Kentucky Statutes, a deed to land to a third person, is champertous and void as against a claimant holding actual adverse possession of the land to a well defined marked boundary at the time of the execution of the deed.

6. Deeds—Title.—A deed from the heirs at law of M. did not pass to or vest in the grantee any title to a tract of land, where the title had previously been conveyed by M. to the remote vendor of one claiming and in posession of the land, who had derived title through successive deeds from the vendees of such vendor of M.

M. C. KIRK for appellants.

W. R. McCOY for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action involves the title to 78 acres of a 125-acre tract of land on Maynard Fork of Wolf Creek, in Martin county, claimed to be owned by the appellee, H. W. McCoy. Appellee claims to have derived title to the 125 acres of land as follows: The survey was pat-

ented by the Commonwealth to Farmer Leslie, May 15, 1837, and on September 3, 1860, was sold by the patentee, Leslie, and by deed conveyed to James P. Kelley, alias James P. Mullens. The latter, in 1880, sold the same 125-acre tract of land to K. F. Leslie and at the time executed and delivered to him a title bond, containing the boundary of the survey and the usual covenant to later make Leslie a deed therefor. Shortly thereafter, K. F. Leslie sold the land to Thomas F. Riffe, at the time assigning and delivering to him the title bond he (Leslie) had received from James P. Kelley, alias Mullens. In November, 1887, James P. Kelley, alias Mullens, in pursuance of the covenants of the title bond he had given K. F. Leslie and which Leslie assigned as stated to Thomas F. Riffe, executed to Riffe, the then holder of the title bond, a deed conveying him the 125 acres of land, with title of general warranty. This deed was duly signed by the grantor and wife, acknowledged by them before a proper officer and delivered to Riffe, but was not put to record by the latter because it was stolen from his trunk and never recovered. On December 8, 1887, Thomas F. Riffe by title bond sold a part of the 125 acres of land to Asa P. McCoy and on February 10th sold the remainder of the tract to the appellee, H. W. McCoy, to whom he also gave a title bond. On October 14, 1896, Asa P. McCoy sold that part of the land he had purchased of Thomas F. Riffe to appellee and executed to him a title bond evidencing such sale, and on October 31, 1896, Thomas F. Riffe and Asa P. McCoy, together with their wives, by a joint deed conveyed the entire 125 acres to the appellee, which deed was properly acknowledged and immediately thereafter duly recorded. Appellee, through a tenant, took possession of the 125 acres of land at the time of his purchase of same and has since continuously so held it.

Desiring to restore the missing link in his chain of title to the 125-acre tract of land caused by the loss of the unrecorded deed by which James P. Kelley, alias Mullens, had conveyed the land to Thomas F. Riffe in 1880 or 1881, appellee brought this action in equity against James P. Mullens, Spencer Mullens, John P. Mullens and A. J. Mullens, the only heirs at law of James P. Kelley, alias Mullens, whose death had occurred before the institution of the action, to compel them to supply by a proper deed executed by them the

loss of the one executed by James P. Kelley, alias Mullens, to Thomas F. Riffe, in 1880 or 1881. The defendants named, heirs at law of James P. Kelley, alias Mullens, being non-residents of the State, were proceeded against by warning order and an attorney appointed to make defense for them, who filed in the action a report in which it was stated that the non-resident heirs at law of James P. Kelley, alias Mullens, had in August, 1906, sold and by deed conveyed whatever interest they were supposed to have in the 125 acres of land to one, Hart Newsome, who in turn, on November 26, 1906, sold and by deed conveyed the same interests to the appellant, George A. Rumsey. July 5, 1907, appellee, by an amended petition filed in the action, made George A. Rumsey a defendant and called on him to assert whatever title or interest he claimed in the land. On February 3, 1908, Rumsey filed an answer claiming the title to 126 acres of land described in the answer, which it was alleged included the 125 acres claimed and held by the appellee. But following a survey of the land by order of the court, Rumsey, by an amended answer, reduced his claim of title to 78 acres of the 125-acre tract claimed by appellee; such claim of title being based upon the deed from Hart Newsome purporting to convey the several interests in the land which Newsome claimed had been conveyed him by the deed from the heirs at law of James P. Kelley, alias Mullens, and under a patent issued by the Commonwealth of Kentucky to one, George W. Young and others of much later date than that from the Commonwealth to Farmer Leslie, embracing the 125 acres held and claimed by appellee.

It appears from the averments of the answer of the appellant, Rumsey, that his claim of title asserted under the George W. Young patent was acquired in the following manner: One, Solomon Stratton, then the owner of the land embraced in the Young patent, executed to J. M. Rumsey & Company a mortgage thereon, which was later enforced in an action brought to recover the debt it was given to secure, and following its sale under a judgment enforcing the mortgage lien for the debt, the land was purchased by J. M. Rumsey & Company, to whom it was conveyed by a commissioner of the court, and later conveyed by deed from J. M.

Rumsey & Company to the appellant, George A. Rumsey.

Appellee's amended petition, which made George A. Rumsey a defendant to the action, and his reply to the answer of the latter, pleaded in avoidance of Rumsey's claims of title, the seniority of the Farmer Leslie patent, denied that the Young patent embraces the land in controversy, and also pleaded that he, appellee, and his vendors had for more than fifteen years, in fact since 1880 or 1881, had and held the actual possession thereof to a well defined, marked boundary, adversely to the appellant, Rumsey, his vendors and all others, and that he and his vendors were in such actual, adverse possession thereof at the time the appellant Rumsey received the deed from Hart Newsome and that executed to him by J. M. Rumsey & Company, and that the deeds in question were, therefore, champertous and void.

Following the taking of proof and submission of the case the circuit court rendered judgment declaring appellee entitled to the land in controversy as a part of the 125 acres to which he claimed title by virtue of the Farmer Leslie patent and the deeds from the immediate and remote vendees of the latter, and also the actual, adverse possession thereof for more than fifteen years by appellee and his vendors. The judgment also quieted his title to the land and directed that the loss of the deed from James P. Kelley, alias Mullens, to Thomas F. Riffe, be supplied by deed through the court's commissioner, which was done accordingly. From that judgment this appeal is prosecuted.

Sections 3991-4000, inclusive, Kentucky Statutes, provide methods for supplying lost or destroyed records, such as books containing deeds, judgments or other instruments that have been recorded in an office as required by law, or papers that are properly filed of record in any court of the State; but we seem to be without a statute providing for the supplying of such instruments as do not constitute public records in the meaning of those sections. However, it has long been the accepted doctrine in this jurisdiction that a court of equity will entertain an action to afford relief by way of supplying an unrecorded lost deed or other instrument and at the same time afford such further relief as may be incidental to the supplying of the lost instrument. Bolware v. Bolware, 1 Litt. 124; West v.

Patton, Littell's Sel. Cas. 405; Fisher v. Mershon, 3 Bibb. 527; Lawrence v. Hammett, 3 J. J. Mar. 287; Bainbridge v. Louisville, 83 Ky. 285; Webb v. Bowman, 3 J. J. Mar. 70; Jackson v. Jackson's Adm'r, 6 Dana. 257; Calvert's Heirs v. Nichol's Heirs, 8 B. Mon. 268.

The doctrine in question is thus stated in 25 Cyc. 1609:

"It has long been well settled that courts of equity have jurisdiction to establish lost instruments, and those courts are not deprived of jurisdiction by reason of the fact that courts of law have assumed, or by statute have been given, the same jurisdiction; and although a court of law would have afforded the same relief by admitting parol evidence of the contents of the lost instrument. It has also been held that where secondary evidence of the contents of the instrument is admitted in a court of law, a court of equity has no jurisdiction unless it is made to appear that the loss obstructs the right of plaintiff at law or exposes him to undue peril in the future. The jurisdiction of equity arose from the inadequacy of the remedy at law, where the rule was that in an action on a bond profert was necessary, and if therefore the instrument was lost the obligee was without remedy. * * *"

As to the extent of the relief to be afforded, in the same volume, on page 1610, it is said:

"A court of equity may establish the possession of the person who claims title under a lost deed, or it may enjoin an action at law on behalf of a defendant therein, and establish his lost deed, or establish the instrument or decree a re-execution of it, or enter an order divesting the title of the grantor and his heirs and vesting it in the grantee and his heirs, or the heirs of the grantor of a lost deed may be compelled to execute a new one. The court may decree a re-execution of the lost instrument, even though the instrument was lost by the gross negligence of the grantee; and, having jurisdiction of the person, it may decree the re-execution of a lost deed of lands lying in another State. Where a court of equity has assumed jurisdiction because the instrument was lost, it will retain jurisdiction and adjudicate all the issues in the case. Where a person's chain of title is incomplete because of the loss of a deed he has a complete remedy in equity in the right to bring an action to establish the lost deed and remove cloud from title,

and he is not obliged to resort to a court of law. A court of equity also has jurisdiction of an action to recover for breaches of a lost bond, or to enforce the payment of a destroyed note, or upon a lost instrument where discovery is sought and also relief consequent upon the discovery. Where a written contract to furnish articles of personal property is lost, equity may enforce payment for the property actually delivered; or where an instrument by which rent was provided for was lost, equity will permit the recovery of the rent secured thereby; and where the title to a portion of the property conveyed by a lost deed fails, the vendee may bring a suit in equity to recover the money to the extent of such failure.''

It seems to be a further well recognized rule that courts of equity will entertain jurisdiction to restore or supply lost instruments only where the execution and former existence of the instrument is clearly established. The burden of proof is on the person claiming on a lost instrument to establish its execution and contents; and where the lost instrument is not admitted, plaintiff must prove it. But the general rules of evidence apply in suits on or to establish lost instruments.

In the instant case we think the due execution and contents of the deed from James P. Kelley, alias Mullens, to Thomas F. Riffe, as well as its loss, were fairly established by appellee's evidence appearing in the record, that of Thomas F. Riffe being definite not only as to the time and place of the execution of the deed, but also as to its contents. He also testified that the deed, though duly acknowledged, was not put to record, but was kept by him in a trunk, and that one day while he and his wife were away attending church, the trunk was broken into and the deed stolen or destroyed. Dan Riffe, another witness introduced by appellee, testified that he saw the deed after its execution. A. W. McCoy testified that he also saw the deed, that its contents were as stated by Thomas F. Riffe, and that in a conversation he had with James P. Kelley, alias Mullens, the latter told him that he had conveyed the land in controversy by deed to Thomas P. Riffe. These witnesses, and Thomas G. Maynard, in addition testified that Thomas F. Riffe was living on the land as early as 1880.

It is patent from the record that the appellee's title to the 125-acre tract of land, including the 78 acres

claimed by the appellant, was properly adjudged by the circuit court, because: First, with the supplying of the lost deed from James P. Kelley, alias Mullens, to Thomas F. Riffe, appellee's chain of title running back to the Farmer Leslie patent of 1837 was made complete and superior to the claim of title asserted by appellant under the George W. Young junior patent; second, the actual, adverse possession of the 125-acre tract of land, including the 78 acres in controversy, to a well defined and marked boundary was satisfactorily shown by the evidence as a whole to have been held and enjoyed by appellee and his vendors continuously from 1880 down to the institution of this action; third, the deed from the heirs at law of James P. Kelley, alias Mullens, to Hart Newsome and that from Newsome to the appellant did not pass to or vest in the latter any title to the land in controversy, as the title had previously been conveyed by James P. Kelley, alias Mullens, to appellee's remote vendor, Riffe, and if this had not been true, as appellee or his vendor was in the actual, adverse possession of the land in controversy, claiming it to a well defined marked boundary, at the time of the execution of the deed from the heirs at law of James P. Kelley, alias Mullens, to Newsome and from Newsome to appellant, they were void and must be so declared by virtue of the provisions of section 210, Kentucky Statutes, known as the "Statute of champerty and maintenance."

In addition to what has been said in approval of the judgment of the circuit court, it may further be remarked that there was evidence conducing to prove that the land in controversy, if included in the boundary of the Young patent, was embraced within a survey excluded or excepted from the land granted by the Young patent. But if this were not true, as the Young patent is junior in date to the Farmer Leslie patent, under which appellee claims and holds the land in controversy, and neither appellant nor his vendors ever had any possession in the lap of the patents, any claim of title that he might otherwise have asserted under the Young patent is inferior and must yield to the title of appellee derived from the Farmer Leslie senior patent. Moreover, if this were not true, appellee's actual, adverse possession of the land in controversy at the time appellant obtained the deed from J. M. Rumsey & Company

through which he claims title under the Young patent. was also champertous and void.

As the rights of the parties were properly determined by the judgment of the circuit court, it must and is hereby affirmed.