## Elkhorn Land and Improvement Company et al. v. Wallace et al.

(Decided February 4, 1930.)

742

STRATTON & STEPHENSON for appellants.

J. E. CHILDERS for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

William Ramey devised to his eldest daughter, Mary Potter, an estate for life in a tract of land at the mouth of Elkhorn creek in Pike county, Ky., with remainder to "the heirs of her body forever." Mary Potter died about 1873, survived by her husband, Richard Potter, and eleven children. The surviving husband took no interest, since the wife had only a life estate in the property. Parsons v. Justice, 163 Ky. 739, 174 S. W. 725. On August 9, 1874, the surviving husband and seven of the children of Mary Potter executed and delivered to George Potter a deed purporting to convey all their interest and rights of dower in the land devised to Mary Potter. The deed as to the husband conveyed nothing, but it did convey the remainder interests held by the children that united therein. Ky. Stats., sec. 2351. On December 31, 1879, George Potter acquired the undivided interest of James H. Potter, and on December 24, 1886, he likewise acquired the interest of Anna Green, who was a daughter of Mary Potter. George Potter then had title of record to nine-elevenths of the land by purchase and to one-eleventh thereof by the will of his grandfather. That left outstanding the one-eleventh interest of his brother John Potter. It is claimed that he acquired the interest of John Potter in 1881 or 1882. There is testimony tending to show that John Potter exchanged his one-eleventh interest in the property to George Potter for a cow and a yoke of cattle. There is also testimony that a deed was then made conveying the interest to George Potter, but that deed was never recorded, and it has not been found. Its contents were proven as a lost instrument, but the jury found against it. George Potter claimed the land, and was living upon it and exercising all the rights of ownership.

On June 22, 1889, George Potter and wife conveyed to John Church one of the tracts of land in controversy, the deed containing a covenant of general warranty. On January 20, 1891, Church and wife conveyed the property to John G. Bentley, and it is now held by one of the children of John G. Bentley, who, after the death of his father, acquired the dower of the widow and the interests in remainder of his brothers and sisters. The remaining land in controversy was conveyed by two deeds from George Potter and wife to Ferrell, Hatcher & Polly, one dated November 6, 1885, and the other January 16, 1889.

Later, in 1890, it was conveyed to the Elkhorn Land & Improvement Company. The deeds from George Potter and wife contained covenants of general warranty and purported to convey the fee-simple title. They were recorded more than twenty-five years before this action was begun. George Potter and his vendees continued in the possession of the property from 1874 to this time. It was subdivided in town lots, and numerous houses were built thereon by the purchasers. A railroad company acquired a right of way through it and built a railway depot thereon. The evidence of continuous possession is overwhelming and uncontradicted, and fully corroborated by the testimony for the plaintiffs, some of whom were hired to help construct improvements on the land. John Potter left seven children surviving him, namely, William, Richard, Levi, Tabitha, Pricey, America and Polly Ann Potter. As already stated there was no recorded instrument showing that George Potter had acquired the interest of John Potter.

It is not shown exactly when John Potter died, but it was probably in 1889, for in August of that year William Potter and wife, Richard Potter and wife, and Levi Potter and wife, three of the children of John Potter, in consideration of $50, executed a deed of conveyance to Ferrell, Hatcher & Polly, conveying to them a described boundary which was recited to include all the lands deeded to George W. Potter by Richard Potter and others, with some minor exceptions. That deed contained a covenant of general warranty. On December 9, 1914, Pricey Potter Bartley, another child of John Potter, and her husband, in consideration of $250, conveyed by a quitclaim deed to the Elkhorn Land & Improvement Company all her interest in the property in controversy. On December 17, 1914, Tabitha Potter Owens, another of John Potter's children, and her husband, in consideration of $250, conveyed to the Elkhorn Land & Improvement Company all their right, title, and interest in the property, with covenant of special warranty. This accounted for five of the children of John Potter, but the interests of America Potter and Polly Ann Potter were not separately acquired. America Potter married Sam Wallace and Polly Ann Potter married Tom Wallace, and each died leaving children. America died about September, 1892, and Polly Ann died in 1893, although the exact date is uncertain. Tom Wallace tes-

tified that Polly Ann died three or four years before the death of her sister America.

This action was instituted by some of the children of America Wallace and some of the children of Polly Ann Wallace, claiming fractional interests in the property derived by descent from their respective mothers. America Wallace was survived by five children, but one of them died subsequently leaving no children, and another died in 1927. Polly Ann Wallace was survived by five children, one of whom died after the action was filed. It was alleged in the petition that the plaintiffs were the owners of an undivided one seventy-seventh interest in the property at the mouth of Elkhorn, and that the Elkhorn Land & Improvement Company and the other defendants owned the other interests, and prayed for a partition of the property. The answer and counterclaim traversed the allegations of the petition, and pleaded affirmatively that the defendants and those under whom they claimed had been in the actual, open, continuous, uninterrupted, notorious, and adverse possession of the land to a well-defined and marked boundary for more than fifteen years before the commencement of the action. The affirmative matter of the answer was traversed by a reply, and it was alleged that at all times during which defendants claimed to have been in adverse possession of the land, and at all times those under whom they claimed were alleged to have been in adverse possession thereof, the plaintiffs and their ancestors were tenants in common with them, and the possession was amicable and not adverse. They further alleged that at all times while defendants and those under whom they held were claiming adversely the plaintiffs and those under whom they claim were under the disabilities of coverture and infancy, and by reason thereof the statute of limitations did not apply. They further pleaded the fact that the Elkhorn Land & Improvement Company and its predecessors had acquired from William Potter, Richard Potter, and Levi Potter, Tabitha Owens, and Pricey Bartley their respective interests in the land, and that thereby defendants had recognized the children of America Wallace and Polly Ann Wallace as joint tenants and tenants in common with them, which proved their possession amicable and not adverse. By a rejoinder, the defendants traversed the affirmative matter in the reply and pleaded affirmatively that all of the plaintiffs had been

of age more than three years prior to the bringing of the suit after the fifteen-year period had expired, and that, notwithstanding infancy, they were barred by limitations. The defendants requested an issue out of chancery to try the question of title, which was granted. Thereafter an amended answer and counterclaim was filed pleading the thirty-year statute of limitations. The affirmative allegations of the rejoinder were traversed of record. The case was tried before a jury, resulting in a verdict for the plaintiffs, and they were thereupon adjudged the interests sought by them. Motion for a new trial was overruled, and this appeal has been prosecuted by the defendants.

1. It is complained that the court erred in awarding the burden of proof to the plaintiffs, but no basis for the contention is apparent. The petition alleged that the plaintiffs were the owners of an undivided interest in the land, which allegation the defendants denied. If no proof had been offered by the plaintiffs to sustain the averment of ownership, judgment would have gone for the defendants. In such cases the burden of proof is upon the plaintiffs. Civil Code of Practice, sec. 526; Louisville & N. R. Co. v. Hargis, 230 Ky. 806, 20 S. W. (2d) 991.

2. It is argued that the verdict of the jury was merely advisory to the chancellor, and should have been disregarded by him in a determination of the issues. It is settled by the decisions that, where a distinct legal issue is made in an equitable action, either party has the right to have such issue tried by a jury, and a verdict in such cases cannot be set aside except by granting a new trial for some reason authorized by the law and the facts. Hill v. Phillips, 87 Ky. 169, 7 S. W. 917, 10 Ky. Law Rep. 31; Carder v. Weisenburgh, 95 Ky. 135, 23 S. W. 964, 15 Ky. Law Rep. 497; Procter v. Tubb, 166 Ky. 676, 179 S. W. 620; Winchester v. Watson, 169 Ky. 213, 183 S. W. 483; Fort v. Wiser, 179 Ky. 709, 201 S. W. 7; Shannon v. Stratton et al., 144 Ky. 29, 137 S. W. 850; Lewis v. Helton, 144 Ky. 598, 139 S. W. 772. In this case the issue out of chancery was awarded on motion of appellants, and was one upon which the verdict of the jury was conclusive, unless a new trial should be granted upon the ground that the verdict was palpably against the weight of the evidence, or upon some other ground authorized by the Civil Code. The verdict of the jury is advisory merely when the issue tried is purely equita-

ble. L. & N. R. Co. v. Tuttle, 180 Ky. 559, 203 S. W. 308; Sellers v. Sellers, 162 Ky. 9, 171 S. W. 449; Hall v. Orme, 146 Ky. 467, 142 S. W. 1077; Wilson v. Nichols & Shepherd Co., 139 Ky. 506, 97 S. W. 18, 29 Ky. Law Rep. 1128. We come then to determine whether a new trial should have been granted.

3. A new trial was asked on the ground of error of the court in excluding testimony offered by the appellants. In so far as the complaint is addressed to testimony respecting offers of compromise, it is sufficient to say that the testimony upon that subject was admitted without objection. In so far as the testimony tended to prove the self-serving declarations of George Potter, a predecessor in title of the appellants, it was not competent. It was proper to prove the fact that Potter claimed to be the owner of the whole property, and also that John Potter, after the alleged conveyance or sale to George Potter, did not claim it; but oral statements of George Potter, not in the presence of John Potter, as to a transaction between them, were not competent, and the court did not err in excluding them. It is also argued that the court erred in rejecting certain testimony of Senator Stephenson respecting the search he had made for the deed claimed to have been lost. The court may have excluded some answers that were proper to be heard, but the error was harmless, because the court permitted the contents of the lost deed to be proven, and submitted the issues respecting it to the jury. The contents of a lost instrument may be proven, but it should be shown that a reasonable search had been made in places where the paper was last known to have been, and, if not found, that inquiry had been made of the person last known to have had it in custody. 10 R. C. L. sec. 76, p. 917; Mullens v. McCoy, 170 Ky. 547, 186 S. W. 137; Haven Malleable Casting Co. v. W. E. Caldwell Co., 146 Ky. 135, 142 S. W. 227; Petty v. Petty, 191 Ky. 612, 231 S. W. 52. The appellants were entitled to prove that a deed from John Potter to George Potter was made and lost, and the contents thereof as fully as was possible. It was entitled also to prove, if it could, that a verbal sale of the land was made by John Potter to George Potter, pursuant to which the consideration was fully paid, and possession of the land maintained thereafter for the statutory period of limitation. There was no inconsistency between the two positions. A party is permitted to interpose as many defenses as he may have, so long

as they are consistent. Defenses are consistent unless the proof of one would necessarily disprove the existence of the other. Civil Code of Practice, sec. 113, subsections 2 and 3; Caruso v. Brown, 142 Ky. 76, 133 S. W. 948.

4. The other grounds for a new trial relate to the instructions given and refused and to a contention that the verdict of the jury was contrary to the evidence, which involves a consideration of the merits. It is admitted that the interest claimed by the appellees in the land in controversy once belonged to their grandfather, John Potter. He did not inherit it from his mother, but it was devised to him by his grandfather, subject to the life estate of his mother. Prior to 1874, upon the death of his mother, John Potter became entitled to the possession of the property. If he did not dispose of it, it descended to his children, of whom Polly Ann Wallace and America Wallace were two, and these plaintiffs represent in part those two children. It is therefore apparent that the plaintiffs were entitled to recover in this case unless John Potter sold and conveyed the property in his lifetime to George Potter, or lost by adverse possession the right to recover it. It is uncontradicted that George Potter claimed the land adversely at least from 1882. He exercised all the rights of ownership. He made conveyances as owner of the entire fee with covenants of general warranty, which deeds were promptly recorded. All this was done during the life of John Potter. If John Potter had, or was charged with notice, the statute of limitations started to run against him. The cause of action having accrued, the operation of the statute was not suspended thereafter by any disability of his descendants. Settle v. Simpson, 204 Ky. 470, 264 S. W. 1092; Henderson v. Fielder, 185 Ky. 482, 215 S. W. 187. Certainly if John Potter sold and conveyed the property to George Potter, the appellees have no interest. One witness testified to the actual execution and delivery of a deed, but the deed was not recorded, and the circumstances were such that it was for the jury to determine whether the testimony of that witness should be accepted. There were contradictory circumstances sufficient to require submission of that question to the jury. The jury found for the appellees, which was in effect a finding against the existence of the deed. The court, however, refused to admit testimony respecting an oral sale by John Potter, or to submit that question to the jury.

There was proof of a sale of the land by John Potter to his brother George Potter in consideration of a cow and a yoke of cattle, which were delivered to him. Several witnesses testified to facts indicating that such a trade was made. Consequently, if that trade was made, the possession of George Potter was adverse from that time, and the alleged cotenant had notice. The trade itself constituted ample notice. Parsons v. Justice, 163 Ky. 737, 174 S. W. 725; Hargis v. Flesher Petroleum Co., 231 Ky. 442, 21 S. W. (2d) 818.

It is true that the possession of one joint tenant is, as a rule, amicable and not adverse to that of the tenants in common, but it is equally true that a joint tenant may hold adversely to his cotenants, which will start the statute of limitations and ultimately bar their rights. Thus if one tenant openly denies the title of his cotenant, is in possession of the property himself by color of title, and claiming it as his own, his holding is adverse. Notice of such adverse holding may be actual or constructive. Godsey v. Standifer, 101 S. W. 921, 31 Ky. Law Rep. 44; Greenhill v. Biggs, 85 Ky. 155, 2 S. W. 774, 775, 8 Ky. Law Rep. 825, 7 Am. St. Rep. 579; Harrington v. Williams, 173 Ky. 575, 191 S. W. 273; Sullivan v. Sullivan, 179 Ky. 686, 201 S. W. 24; Clinchfield Northern R. Co. v. Cline, 185 Ky. 528, 215 S. W. 538; Wilcox v. Sams, 213 Ky. 696, 281 S. W. 832. "Actual notice has never been held . . . necessary in order to constitute adverse holding a bar to recovery in such case; it being deemed sufficient when one joint owner holds and claims the land continuously, and in such manner as to apprise the other joint owners of the adverse character of the possession." Greenhill v. Biggs, supra; Russell's Heirs v. Marks' Heirs, 3 Metc. 37. When the adverse holding is notorious and open and known to the parties affected, or because of the character of use of the property it should be known, actual knowledge may be inferred or imputed. Wilcox v. Sams, supra.

Some of the appellees testified that they had never heard they had an interest in the property until a short time before filing suit. It is difficult to understand how the entire family for so many years could have been in ignorance of the fact, if they owned an interest in property of the character and value of that involved in this case. But the appellees insist that the purchases from some of the children of John Potter and the taking of

deeds from them, and negotiation with some of appellees for a purchase of their rights, constituted a recognition of outstanding interests, and proved that the possession was not adverse. There is uncontradicted testimony that such purchases were made in order to have a record title to the property, and to avoid litigation. The offer to buy from appellees was made for the same reason. It was thought more economical to purchase peace than to bear the burden of threatened litigation. Cf. Begley v. Valentine, 160 Ky. 526, 169 S. W. 1026, and Dils v. Kentland Coal & Coke Co., 228 Ky. 161, 14 S. W. (2d) 395. Such evidence related alone to the Elkhorn Land & Improvement Company. There was nothing adduced to meet or impair the proof respecting the adverse possession of the John G. Bentley tract of land. The entire ownership and exclusive possession of that land was never questioned. We find no evidence to rebut the inference of notice of the adverse claims as to all the land involved, and, unless the plaintiffs, upon another trial, can show by competent evidence that they, and those under whom they claim, were without notice of the adverse holding of the appellants and their predecessors, the jury should be directed to find for the defendants. If evidence should be introduced to warrant the submission of that issue, the instructions should be framed appropriately for that purpose.

The question of infancy or other disability does not enter into the matter, since the cause of action accrued in the lifetime of John Potter, and it was not suspended by subsequent disabilities of any of his descendants. May v. C. & O. Ry. Co., 184 Ky. 493, 212 S. W. 131; Settle v. Simpson, 204 Ky. 470, 264 S. W. 1092; Foust v. Hill, 215 Ky. 364, 285 S. W. 235.

It is plain, from what has been said, that the verdict of the jury was palpably against the evidence, and a new trial should be granted upon that ground, as well as for the refusal to direct a verdict for defendants. All questions not expressly decided are reserved, as the facts on another trial may not be the same.

The judgment is reversed for a new trial consistent with this opinion.