## Chilton's Administrator v. Shelley.

(Decided February 5, 1932.)

R. F. PEAK and BEN F. WASHER for appellant.

MORTON K. YONTS and DAVID A McCANDLESS for appellee.

Opinion of the Court by Judge Rees—Reversing.

James E. Chilton died testate on October 22, 1927, at the age of 88 years. His wife had died on March 25, 1925. He left the bulk of his estate to Shelby Roberts, a nephew of Mrs. Chilton. A contest of the will was instituted by Mr. Chilton's collateral heirs, and the trial resulted in a judgment in favor of the propounders which was affirmed on appeal to this court. Shelley v. Chilton, 236 Ky. 221, 32 S. W. (2d) 974. Appellee, Lewis C. Shelley, a nephew of Mr. Chilton, was one of the contestants. While that case was pending he filed an ordinary action in the Oldham circuit court against the administrator with the will annexed of James E. Chilton, in which he sought a judgment for $15,000 as damages for the breach of a contract alleged to have been entered into between him and Mr. Chilton.

In his petition he alleged that he formerly lived in Bloomington, Ind., and that in the year 1926 his uncle requested him to sell his home in Bloomington and move to Oldham county, Ky., and agreed to will appellee his home place and all the tangible personal property on the premises, if appellee would live with him in his home and take care of him and attend to his needs and wants and manage the place on which his home was situated until his death. He further alleged that he accepted his uncle's proposition, sold his home in Indiana at a sacrifice, and with his wife moved to Kentucky, and from May 31, 1926, to October 22, 1927, faithfully attended to the needs and wants of his uncle and managed his place, but that the latter breached his contract to will appellee his home place and the personal property thereon.

The administrator moved for a rule against the plaintiff to require him to show cause why his petition should not be dismissed for want of statutory proof. The rule was issued, and in response the appellee filed his own affidavit and the affidavit of his daughter, Miss Leila Shelley. The facts set out in his affidavit corresponded

substantially with the averments of his petition. At this stage of the proceedings the action was one on the quantum meruit for services rendered. The appellee later filed an amended petition in which he alleged, in substance, that the contract relied upon was in writing and was contained in a letter written to him in the year 1926, by James E. Chilton, which letter had been lost or mislaid. In this amended petition he sought specific performance of the alleged contract evidenced by the lost letter. A motion was filed to require him to elect which cause of action he would prosecute, and he elected to prosecute the cause of action set up in the amended petition.

After the proof had been taken, a second amended petition was filed in which it was alleged that the proposition contained in the letter from Mr. Chilton was accepted in writing in a letter signed by plaintiff and addressed to Mr. Chilton and duly deposited in the United States mail. In this second amended petition it was alleged that the property described in the former pleadings was of the value of $15,000, and plaintiff asked that, in the event the court for any reason could not decree specific performance, he be awarded $15,000 in damages for breach of contract. Later a third amended petition was filed in which it was alleged that the letter relied on was lost without fraud or fault on the part of the plaintiff. Upon submission of the case the court denied specific performance, but entered a judgment in favor of the plaintiff for $10,000 damages, and the administrator appeals.

On this appeal it is contended that the lower court erred in three particulars: (1) In awarding a judgment for $10,000, when the only remedy under the allegations of the petition as amended and the finding of the court would be a judgment for specific performance; (2) in failing to render a judgment for the appellant; and (3) in admitting incompetent evidence without which he would have been entirely without proof to sustain a finding that a written contract existed.

The judgment appealed from reads in part:

> "The court being sufficiently advised is of the opinion that the plaintiff, Lewis C. Shelley, has established the contract claimed in his petition; but inasmuch as the property sought to be recovered has been devised to Shelby S. Roberts in the will of

James E. Chilton, deceased, and the court being in doubt as to whether specific performance of plaintiff's contract can be enforced, is of the opinion that plaintiff is entitled to alternate relief in the value of the property involved in the contract between the parties. The court is further of the opinion that said property was of the reasonable market value of $10,000.00 at the day of the death of the testator, James E. Chilton. And the plaintiff is entitled to recover this sum.''

If the contract was established, the court should have entered judgment directing that the property covered by the contract be conveyed to appellee, and not for the reasonable market value of the property involved in the contract. The settled rule in this state is that in such case the property is impressed with a trust in the hands of the heir at law, devisee, personal representative, or purchaser with notice of the agreement, and equity does what is equivalent to specific performance of the agreement by compelling those upon whom the legal title has descended to convey or deliver the property to the person to whom, according to the terms of the agreement, it ought to have been devised. Skinner v. Rasche, 165 Ky. 108, 176 S. W. 942.

Here the property had not been transferred to an innocent purchaser, but had been devised to Shelby Roberts, and if there is sufficient evidence to establish the existence and contents of the alleged lost letter and the agreement by James E. Chilton to will the property in question to appellee is thus proved, the property is impressed with a trust in the hands of the devisee and the judgment should have been one for specific performance of the contract.

Appellee bases his claim upon a proposition contained in a letter alleged to have been written to him by the decedent and accepted by him in a letter written, addressed and mailed to the decedent, both of which letters have been lost. Before secondary evidence of the contents of a written instrument is admissible, it must be satisfactorily shown that the instrument containing the primary evidence of the fact to be proved has been lost without the fault of the party desiring to prove the fact. Mutual Life Insurance Company v. Louisville Trust Company, 207 Ky. 654, 269 S. W. 1014; Lipps v. Turner, 164 Ky. 626, 176 S. W. 42; Haven Malleable Casting Com-

pany v. W. E. Caldwell Company, 146 Ky. 135, 142 S. W. 227. Appellee's deposition was taken by appellant and he was examined as if under cross-examination as to the loss of the letter, and he testified that the letter was lost while he was moving from Bloomington, Ind., to Kentucky and that he had recently made a search for it. His statements were corroborated by Mrs. Shelley, but, excluding their statements, the testimony of Miss Leila Shelley was to the same effect. The predicate laid for the introduction of secondary evidence of the letter's contents was, in our opinion, sufficient. The only question left to be determined is: Was the evidence sufficient to establish the existence and contents of the alleged letter? The evidence of the contents of a lost instrument must be clear and satisfactory. Petty's Heirs v. Petty, 191 Ky. 612, 231 S. W. 52; Mullens v. McCoy, 170 Ky. 547, 186 S. W. 137; Jackson v. Jackson's Admr., 6 Dana 257. The same standard must be applied here as applies where it is sought to prove the contents of a lost deed, or other muniment of title, and enforce its provisions.

Appellee is basing his claim wholly upon an express contract in writing—a letter which he alleges was lost—and he is asking that such contract be enforced and the real estate conveyed to him. It has been held that, where the instrument is a muniment of title, public policy demands that the proof of its former existence, its loss, and its contents should be clear and satisfactory. Petty's Heirs v. Petty, 191 Ky. 612, 231 S. W. 52; Scurry v. Seattle, 56 Wash. 1, 104 P. 1129, 134 Am. St. Rep. 1092.

In Erwin v. Kerrin, 169 Ark. 183, 274 S. W. 2, 5, the Supreme Court of Arkansas said:

> "The rule is well established in this state, as well as by the authorities generally, that the burden is upon one who claims title under the alleged lost instrument to establish the execution, contents, and loss of such instrument by the clearest, most conclusive, and satisfactory proof."

In Dunnavant v. Dunnavant, 120 Va. 301, 91 S. E. 138, the following was quoted with approval from Thomas v. Ribble (Va.), 24 S. E. 241:

> "Where the instrument rises to the dignity and importance of a muniment of title, every principle of public policy demands that the proof of its former existence, its loss, and its contents, should

be strong and conclusive, before the courts will establish a title by parol testimony to property which the law requires shall pass only by deed or will. That courts of equity have the jurisdiction to set up lost deeds and wills, and establish titles under them, can certainly not be denied; but it is a dangerous jurisdiction, and so pregnant with opportunities of fraud and injustice that it will not be lightly exercised, nor except upon the clearest and most stringent proof.''

That such is the generally recognized rule, see Heath v. Cuppel, 163 Wis. 62, 157 N. W. 527; Craig-Giles Iron Company v. Brownlee (C. C. A.), 272 F. 74; Friedline v. Friedline, 275 Pa. 463, 119 A. 545; Shipley v. Shipley, 274 Ill. 506, 113 N. E. 906; Hutton v. Busaytis, 326 Ill., 453, 158 N. E. 156.

With this rule of law in mind, we shall proceed to consider the evidence offered by appellee to prove the former existence and contents of the alleged letter. Three witnesses, who claim to have seen and read the letter, testified as to its existence and contents. These were appellee's wife, Mrs. Mollie Shelley, his daughter, Miss Leila Shelley and Earl G. Short, a kinsman of Mrs. Shelley. Mrs. Shelley testified as to the contents of the letter which she claimed her husband received from Mr. Chilton, and she further testified that she and her husband talked the matter over, and that at her husband's direction she wrote a letter accepting the proposition and signed her husband's name to it. The court admitted a portion of her testimony on the theory that she was acting as her husband's agent, and that the testimony was admissible under the exception contained in section 606 of the Civil Code of Practice which reads:

"And except that when a husband or wife is acting as agent for his or her consort, either of them may testify as to any matter connected with such an agency."

As to whether or not Mrs. Shelley's testimony was admissible under this exception to the Code provision prohibiting a wife from testifying for or on behalf of her husband, we need not inquire, since we have concluded that the other evidence introduced by the appellee was sufficient to establish the existence and contents of the lost letter.

Miss Leila Shelley, daughter of appellee, testified that she saw a letter written by Mr. James E. Chilton to her father, and as to its contents said:

"The substance of the letter was that Uncle Jimmy found himself alone at his home in Pewee Valley because of the illness of his sister-in-law, who had been living with him, and had found that he wouldn't be able to live there any longer unless he could get someone to come there and take care of him who would be more reliable than hired servants. So he suggested that my father and mother should come down and live on the place and run the farm and manage the house. In return for that he would will them the place."

Before giving her deposition Miss Shelley had sworn to an affidavit in which she stated that about two years before the death of James E. Chilton on October 22, 1927, and in her presence in Bloomington, Ind., James E. Chilton requested and urged her father to live with him and take care of him the remainder of his life, as his wife had died and he had no one else to call on for help.

The appellant argues that the statements contained in her affidavit are so inconsistent with her deposition taken a few months later as to destroy her credibility as a witness. The appellee argues, however, that the statutory affidavit could not be used as evidence to contradict her, since it was not shown to her when her deposition was given and therefore no foundation was laid for a contradiction of her testimony under section 598 of the Civil Code of Practice. Be that as it may, we think that while some of the statements contained in her affidavit are apparently inconsistent with her testimony, yet if she had been confronted with the affidavit and examined in regard to it, she may have satisfactorily accounted for the apparent inconsistencies. About two years before his death Mr. Chilton was a visitor in appellee's home in Bloomington, Ind., and it may be that he then made the statements attributed to him by Miss Shelley in her affidavit, which would be entirely consistent with the alleged contents of the lost letter written a few months later.

Earl G. Short testified that he was related to Mrs. Shelley, and that on one occasion, while he was in the Shelley home in Bloomington, Ind., he was shown a

letter signed by James E. Chilton. With reference to the contents of the letter his testimony was as follows:

"He told them that he was going—that the lady who had been keeping house for him was going to leave and he needed someone to take care of him, he was old, and if they would come down and take care of him the rest of his days he would will them the property where he lived."

The Shelleys advised with him as to their acceptance of the proposition contained in the letter. A number of disinterested witnesses, neighbors of Mr. Chilton, testified as to statements made by Mr. Chilton in regard to the arrangement between him and appellee. The substance of their testimony is as follows: Mr. Chilton stated to Mr. E. A. Barnett about the time the Shelleys moved to Kentucky that he had made an agreement with his nephew to live with him and make a home for him and he would leave him the home. In a conversation some weeks before the Shelleys arrived, Mr. Chilton told Mr. A. H. Hall that "he was going to get some of his relatives to come here to keep house for him, keep him, and after he got him he had him up at the shop and told me this was the fellow, introduced me to him." Both before and after appellee came to Kentucky the decedent told the witness that he was going to give Shelley his house and lot for taking care of him during his life. The decedent stated in the presence of Matthew Collins that he had told the Shelleys if they would come to Kentucky and take care of him the rest of his life he would give them the home place. To Mr. Fred Kilgus he stated that he had invited the Shelleys to come to Kentucky and he had agreed to will them his home place if they would take care of him the balance of his life. Similar statements were made by the decedent to J. N. Cassady and B. P. Million.

After the death of Mrs. Chilton on March 25, 1925, Mrs. Pierce, a sister of Mr. Chilton, left her home in Virginia, came to Kentucky, and lived with the decedent for more than a year. She decided to return to her home in Virginia, and it appears that the decedent then began negotiations with the Shelleys as he desired to procure some one to live in the house and look after the place. Before Mrs. Pierce's departure, he consulted with Mrs. Della McLean relative to writing a letter to appellee and

offering him his home place if Shelley and his wife would come to Kentucky and take care of him the balance of his life. Mrs. McLean testified that both she and Mrs. Pierce advised him to make such an arrangement if possible. The witness also testified that the decedent later told her he had written to the Shelleys and offered to will them the place and everything on it if they would come and take care of him. In stating the substance of what the decedent had said to her on divers occasions in regard to the agreement between him and appellee, this witness said:

> "He talked that over with me a number of times, he said he told them if they would come and take care of the place, take care of him, he would will them the place and everything there."

The surrounding circumstances and the inferences deducible therefrom support and fortify the evidence offered by appellee in reference to the letter and nature of the contract. It is unlikely that appellee would dispose of his home in Indiana, move to Kentucky, and live with his uncle until the latter's death unless some agreement between them existed, and since they had not met after September, 1925, it is reasonable to assume that such agreement had been reached through the exchange of letters. We think the evidence meets the requirements of the rule stated above and was sufficient to establish both the existence and the contents of the lost letter.

The judgment is reversed, with directions to enter a judgment in conformity herewith.

The whole court sitting.